IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 1 3 2019 ★

BROOKLYN OFFICE

CV 19 - 6983

CHEN, J.

TISCIONE, M.J.

Judith A. Archer
Julie Pateman Ward
Dean W. Steele
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York  10019
Tel.:  (212) 318-3000
Fax:  (212) 318-3400
judith.archer@nortonrosefulbright.com
julie.ward@nortonrosefulbright.com
dean.steele@nortonrosefulbright.com
*Attorneys for Plaintiff*
*ExxonMobil Oil Corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

EXXONMOBIL OIL CORPORATION,      :

                :

       Plaintiff,      :

                :

   -against-      :

                :

                :

M/V JANE A BOUCHARD, IMO number   :
9269702, Official number 1139762, her   :
engines, apparel, furniture, equipment,   :
appurtenances, tackle, etc., *in rem*,   :

                :

       Defendant.      :

-------------------------------------------------------- X

Case No.:

**VERIFIED COMPLAINT IN
ADMIRALTY IN REM**

 

Plaintiff, ExxonMobil Oil Corporation, (hereinafter "Exxon" or "Plaintiff"), by and through its undersigned counsel, for its Complaint *in rem* against the M/V JANE A BOUCHARD, IMO number 9269702, Official number 1139762, her engines, apparel, furniture, equipment, appurtenances, tackle, etc. (hereinafter, "M/V JANE A BOUCHARD" or "the Vessel"), *in rem*, and alleges and pleads as follows:

## JURISDICTION AND VENUE

1.      This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Admiralty Rule C, as hereinafter more fully appears.  The Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1333 and the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§ 31301-31343. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

2.      Venue is proper in the Honorable Court because the Defendant Vessel presently is or will be situated within the waters of this District during the pendency of this action.

## PARTIES

3.      At all times material hereto, Exxon was and still is a New York corporation, with its head office at 22777 Springwoods Village Parkway, Spring, Texas 77389.

4.      Defendant M/V JANE A BOUCHARD, her engines, apparel, furniture, appurtenances, tackle, etc., is registered under the laws of the United States, and is and will be within the jurisdiction of the United States and this Honorable Court during the pendency of this action.

## FACTUAL BACKGROUND

5.      Exxon brings this action in order to recover money indisputably due and owing to it for the provision of bunker fuel (hereinafter "Bunkers") and marine lubricants (hereinafter "Lubes") to the Vessel under the ExxonMobil Oil Corporation General Conditions of Contract (hereinafter, the "GCC"), which apply to the sale and provision of Bunkers, said terms of which were provided to and accepted by the Buyer prior to Exxon's performance; the ExxonMobil Marine Lubricants Standard Terms & Conditions (hereinafter, the "STC") which apply to the sale and provision of Lubes, said terms of which were provided to and accepted by the Buyer

prior to Exxon's performance; and the respective invoices for the provision of said Bunkers and Lubes to the Vessel. The terms and conditions of the GCC and STC related to the provision of and payment for Bunkers and Lubes, respectively, were consistent for the relevant period and in effect at the time of the provision of the Bunkers and Lubes in question.  Attached as Exhibits 1 and 2 to this Complaint are true and correct copies of the GCC and STC, respectively.

6.      Both the GCC and STC are between Exxon, as Seller, and, in accordance with the invoices, the Master and Owners of the Vessel c/o Bouchard Transportation Company (hereinafter, "Bouchard"), as Buyer.

7.      Section 13 of the GCC states that:

> Deliveries of Marine Fuel hereunder are not made only on the credit of the Buyer but also on the faith and record of the vessel which uses the Marine Fuel and it is agreed that Seller will have and may assert a lien against such vessel for the amount of the delivered price of said Marine Fuel.  Additionally, the Seller will have and may assert a lien for the said  amount of the delivered price against such vessel or associated vessels, should the law applicable at the place of Seller's address, at the place of delivery of the Marine Fuel and/or at the place of seizure of such vessel, grant or recognize a lien for Marine Fuel delivered to a vessel or associated vessels.  All costs associated with the seizure of the vessel or associated vessels shall be for the Buyer's account. Taking of any additional security measures by Seller shall now operate as a waiver of this provision.  For the avoidance of doubt, the Buyer shall not be entitled to cancel the effect of the lien by wording on the delivery ticket or otherwise.

Exhibit 1.

8.      Section 3 of the STC states, in part, that:

> Sales are made on the credit of the receiving vessels as well as on Buyer's promise to pay, and amounts due shall immediately upon Delivery become a maritime lien against each such vessel in favor of Seller.

Exhibit 2.

9.      Section 5 of the STC states that:

Buyer shall indemnify and hold Seller, its Affiliates, and its Agents harmless against any losses, damages, costs or expenses (including reasonable attorney fees) that Seller, its Affiliates, or its Agents may incur or for which they may become liable arising out of the wrongful or negligent acts or omissions of Buyer, its Affiliates, or its Agents or of the receiving vessel in connection with any sale, purchase, or delivery of Product pursuant to these Standard Terms & Conditions.

Exhibit 2.

**INVOICE NO. 36303034**

10.     In accordance with invoice No. 36303034, dated 29 March 2019, Exxon delivered Lubes to the Vessel on or about 11 March 2019 (a true and correct copy of the invoice is attached as Exhibit 3).

11.     Upon delivery of the Lubes to the Vessel, a Marine Delivery Receipt (hereinafter, "MDR") was signed by the Vessel's Master and/or Chief Engineer and stamped with the Seal of the Vessel (a true and correct copy of the MDR is attached as part of Exhibit 3).

12.     The invoice requires payment by the due date indicated, 30 April 2019 (*See* Exh. 3); and the STC provides for the accrual of interest on any late payments. (*See* Exh. 2 §3 of STC allowing for 1% per month).

13.     The amount owed by the Vessel and her agent, Bouchard, to Exxon for this delivery is $6,531.00 USD plus interest and costs.

**INVOICE NO. 36431033**

14.     In accordance with invoice No. 36431033, dated 9 April 2019, Exxon delivered Bunkers to the Vessel on or about 4 April 2019 (a true and correct copy of the invoice is attached as Exhibit 4).

15.     Upon delivery of the Bunkers to the Vessel, a MDR was signed by the Vessel's Master and/or Chief Engineer and stamped with the Seal of the Vessel (a true and correct copy of the MDR is attached as part of Exhibit 4).

16.     The invoice requires payment by the due date indicated, 31 May 2019 (*See* Exh. 4); and the GCC provides for the accrual of interest on any late payments. (*See* Exh. 1 §11 of GCC allowing for 1.5% per month).

17.     The amount owed by the Vessel and her agent, Bouchard, to Exxon for this delivery is $52,701.32 USD plus interest and costs.

**INVOICE NO. 36592537**

18.     In accordance with invoice No. 36592537, dated 24 April 2019, Exxon delivered Bunkers to the Vessel on or about 18 April 2019 (a true and correct copy of the invoice is attached as Exhibit 5).

19.     Upon delivery of the Bunkers to the Vessel, a MDR was signed by the Vessel's Master and/or Chief Engineer and stamped with the Seal of the Vessel (a true and correct copy of the MDR is attached as part of Exhibit 5).

20.     The invoice requires payment by the due date indicated, 31 May 2019 (*See* Exh. 5); and the GCC provides for the accrual of interest on any late payments. (*See* Exh. 1 §11 of GCC allowing for 1.5% per month).

21.     The amount owed by the Vessel and her agent, Bouchard, to Exxon for this delivery is $66,036.00 USD plus interest and costs.

**INVOICE NO. 36595478**

22.     In accordance with invoice No. 36595478, dated 25 April 2019, Exxon delivered Lubes to the Vessel on or about 23 April 2019 (a true and correct copy of the invoice is attached as Exhibit 6).

23.     Upon delivery of the Lubes to the Vessel, a MDR was signed by the Vessel's Master and/or Chief Engineer and stamped with the Seal of the Vessel (a true and correct copy of the MDR is attached as part of Exhibit 6).

24.     The invoice requires payment by the due date indicated, 31 May 2019 (*See* Exh. 6); and the STC provides for the accrual of interest on any late payments. (*See* Exh. 2 §3 of STC allowing for 1% per month).

25.     The amount owed by the Vessel and her agent, Bouchard, to Exxon for this delivery is $2,882.00 USD plus interest and costs.

**INVOICE NO. 36694468**

26.     In accordance with invoice No. 36694468, dated 3 May 2019, Exxon delivered Lubes to the Vessel on or about 1 May 2019 (a true and correct copy of the invoice is attached as Exhibit 7).

27.     Upon delivery of the Lubes to the Vessel, a MDR was signed by the Vessel's Master and/or Chief Engineer and stamped with the Seal of the Vessel (a true and correct copy of the MDR is attached as part of Exhibit 7).

28.     The invoice requires payment by the due date indicated, 1 July 2019 (*See* Exh. 7); and the STC provides for the accrual of interest on any late payments. (*See* Exh. 2 §3 of STC allowing for 1% per month).

29.    The amount owed by the Vessel and her agent, Bouchard, to Exxon for this delivery is $390.75 USD plus interest and costs.

**INVOICE NO. 37507140**

30.    In accordance with invoice No. 37507140, dated 16 July 2019, Exxon delivered Lubes to the Vessel on or about 14 July 2019 (a true and correct copy of the invoice is attached as Exhibit 8).

31.    Upon delivery of the Lubes to the Vessel, a MDR was signed by the Vessel's Master and/or Chief Engineer and stamped with the Seal of the Vessel (a true and correct copy of the MDR is attached as part of Exhibit 8).

32.    The invoice requires payment by the due date indicated, 3 September 2019 (*See* Exh. 8); and the STC provides for the accrual of interest on any late payments. (*See* Exh. 2 §3 of STC allowing for 1% per month).

33.    The amount owed by the Vessel and her agent, Bouchard, to Exxon for this delivery is $8,152.00 USD plus interest and costs.

**INVOICE NO. 37576201**

34.    In accordance with invoice No. 37576201, dated 22 July 2019, Exxon delivered Bunkers to the Vessel on or about 14 July 2019 (a true and correct copy of the invoice is attached as Exhibit 9).

35.    Upon delivery of the Bunkers to the Vessel, a MDR was signed by the Vessel's Master and/or Chief Engineer and stamped with the Seal of the Vessel (a true and correct copy of the MDR is attached as part of Exhibit 9).

36.     The invoice requires payment by the due date indicated, 3 September 2019 (*See* Exh. 9); and the GCC provides for the accrual of interest on any late payments. (*See* Exh. 1 §11 of GCC allowing for 1.5% per month).

37.     The amount owed by the Vessel and her agent, Bouchard, to Exxon for this delivery is $117,997.60 USD plus interest and costs.

38.     Under the payment terms of the invoices, the GCC and the STC, the payment deadline for all of the foregoing invoices has passed.  As of the date of filing this Verified Complaint, Exxon has not received any payments. Consequently, the Vessel and its agent are in breach of the GCC and STC.  In addition, Exxon has not received any confirmation, advice or other information as to when payment will be received.  Quite the contrary, all attempts by Exxon to obtain payment information have been ignored.  Bouchard and the Vessel have accordingly breached the GCC and STC.

39.     By signing the MDRs, the Vessel's officers and representatives acted on behalf of the Vessel and her Owner and/or Operator to procure Bunkers and Lubes, and thereby accepted the Bunkers and Lubes on behalf of, *inter alia*, the Vessel in compliance with the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§ 31301-31343.

40.     The Bunkers and Lubes delivered to the Vessel were necessary to the accomplishment of her mission as a commercial ship.  The Vessel's officers and representatives, at the time of the Bunkers and Lubes deliveries from Exxon, were authorized to order necessaries for the account and on the credit of the Vessel.

41.     The Vessel has received the benefit of the aforementioned Bunkers and Lubes deliveries and is indebted to Exxon and obligated to pay for the aforementioned goods and services.

42.     Exxon performed all conditions precedent to warrant full and complete payment for the aforementioned Bunkers and Lubes supplies and services.

43.     As a result of the foregoing, Exxon possesses a maritime lien on the Vessel for the provision of necessaries, Bunkers and Lubes, enforceable in admiralty in accordance with the provisions of Rule C of the Supplemental Admiralty Rules.

44.     Additionally, Section 11 of the GCC,  provides that "Buyer[1] shall pay all costs incurred by Seller (including, but not limited to attorneys' fees and collection agency costs) in connection with this Agreement arising out of Buyer's failure to pay any amount due and owing to Seller hereunder". (*See* Exh. 1 at §11). For the sake of completeness, this should include *custodia legis* fees. To date, Exxon has incurred and continues to incur legal and other fees, as well as costs, to collect payment.  Exxon will supplement at a later date with a full accounting of its legal and other fees and costs for this matter.

45.     Payment of all sums has been duly demanded by Exxon from the Vessel and its Owners.  However, to date, the Vessel has neglected, failed or otherwise refused to pay the outstanding aggregate sum of $254,690.67 USD plus interest and fees, which is indisputably due and owing to Exxon for the Bunkers and Lubes under the GCC and the STC.

## ALLEGATIONS IN SUPPORT OF VESSEL ARREST

46.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "45" and incorporates those allegations herein.

47.     As a result of the Vessel's failure to pay Exxon for the Bunkers and Lubes supplied to the Vessel, under the terms of the GCC and STC, Exxon's claim for the amount of

---

[1]The GCC define "BUYER" to include Buyer's employees, officers, agents or representatives including without limitation, the Buyer's vessel, local agents or other service contractors or operators including masters, owners, demised charterers and/or operators of vessels supplied or caused to be supplied by the Seller. (*See* Exh. 1 at §1).

$254,690.67 USD plus interest and fees attaches a maritime lien on the Vessel in favor of Exxon and is enforceable by suit *in rem*.

48.     Accordingly, Exxon seeks to enforce its maritime lien, pursuant to Rule C of the Supplemental Admiralty Rules.

WHEREFORE PREMISES CONSIDERED, Exxon prays as follows:

A.     That process in due form of law, according to the practice of this Honorable Court in cases of admiralty and maritime jurisdiction, issue against the M/V JANE A BOUCHARD, IMO number 9269702, Official number 1139762, her engines, apparel, furniture, equipment, appurtenances, tackle, etc., *in rem*, citing it to appear and answer under oath all, and singular, the matters alleged in the Verified Complaint;

B.     That a warrant for the arrest of the M/V JANE A BOUCHARD be issued and that the Vessel be seized by the U.S. Marshal to be held as security against any judgment to be entered herein against the M/V JANE A BOUCHARD, IMO number 9269702, Official number 1139762, her engines, apparel, furniture, equipment, appurtenances, tackle, etc., *in rem*;

C.     That after due proceedings, judgment be entered in favor of Exxon and against the M/V JANE A BOUCHARD, IMO number 9269702, Official number 1139762, her engines, apparel, furniture, equipment, appurtenances, tackle, etc., *in rem*, for the amount of $254,690.67 USD as well as for late payment charges, pre-judgment interest, post-judgment interest, costs, attorney fees, collection fees, *custodia legis* expenses, as well as other fees and disbursements for this suit which sum remains outstanding, unpaid, due and owing from the Vessel to Plaintiff;

D.     That the M/V JANE A BOUCHARD, IMO number 9269702, Official number 1139762, her engines, apparel, furniture, equipment, appurtenances, tackle, etc., *in rem*, after her arrest be condemned and sold, free and clear of all liens and encumbrances, to satisfy the

judgment, and that the Court award Exxon out of the proceeds of the said sale, the full amount of its claim, together with late payment charges, pre-judgment interest, post-judgment interest, costs, attorney fees, collection fees, *custodia legis* expenses, as well as other fees and disbursements for this suit which sum remains outstanding, unpaid, due and owning from the Vessel to Plaintiff; and

   E.  That the Court grant Exxon such other and further relief as may be just, equitable, and proper.

Dated: December 10, 2019
   New York, New York

Respectfully submitted,
NORTON ROSE FULBRIGHT US LLP

By: /s/
   Judith A. Archer
   Julie Pateman Ward
   Dean W. Steele

1301 Avenue of the Americas
New York, New York  10019
Tel.: (212) 318-3000
Fax: (212) 318-3400
judith.archer@nortonrosefulbright.com
julie.ward@nortonrosefulbright.com
dean.steele@nortonrosefulbright.com

*Attorneys for Plaintiff*
*ExxonMobil Oil Corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------ X

EXXONMOBIL OIL CORPORATION,                          :
                                                     :
                                                     :
                  Plaintiff,                         :
         -against-                                   :        Case No.:
                                                     :
                                                     :
M/V JANE A BOUCHARD, IMO number                      :
9269702, Official number 1139762,                    :
her engines, apparel, furniture, equipment,          :
appurtenances, tackle, etc., *in rem*,               :
                                                     :
                  Defendant.                         :
------------------------------------------------------ X

## <u>VERIFICATION OF COMPLAINT</u>

Pursuant to 28 U.S.C. §1746, Michael P. Gallagher, declares under the penalty of perjury:

1.      I am the East Canada and Northeast/Midwest US Commercial Sales Manager for ExxonMobil Oil Corporation (hereinafter referred to as "Exxon"), the plaintiff in the above captioned bunker contract dispute. I am competent to testify as to the matters covered in this declaration.

2.      I have read the foregoing Verified Complaint and believe the contents thereof are true.

3.      The sources of my information and belief are my personal knowledge of the information contained therein and information contained within Exxon's files and records.

Dated: December 10, 2019 at Ashburn, Virginia.

_____
Michael P. Gallagher

# EXHIBIT 1

### EXXONMOBIL OIL CORPORATION GENERAL CONDITIONS OF CONTRACT ("EMOC –MF GCC 2019")

#### 1. APPLICATION

ExxonMobil Oil Corporation, a New York corporation having an address at 22777 Springwoods Village Parkway, Spring, TX 77389 ("**Seller**"), will sell and deliver, or cause to be sold and delivered, to Buyer (as identified in the Order Confirmation and/or any applicable term contract or documentation), and Buyer will purchase, accept delivery of and pay Seller for Marine Fuel.

These GCC 2019 shall apply to all such sales of Marine Fuel and supersedes all previous General Conditions of Contract issued by the Seller.

All references hereunder to **"this Agreement"** shall mean to these GCC 2019, the Order Confirmation, any applicable term contract and/or amendments and/or variations which are expressly made with reference to any one or more of these listed.

The **"Order Confirmation"** is an order for Marine Fuel placed by or on behalf of the Buyer with the Seller or with its relevant affiliate(s), which has been confirmed in writing by or on behalf of the Seller.

All references to the Seller in these GCC 2019 shall include, unless otherwise stated, Seller and Seller's affiliated company(s), employees, officers and agents, and also such other supplying/delivering company Seller may assign or engage to perform obligations in whole or in part hereunder respectively. All references to the Buyer in these GCC 2019 shall include unless otherwise stated Buyer's employees, officers, agents or representatives including without limitation, the Buyer's vessel, local agents or other service contractors or operators including masters, owners, demised charterers and/or operators of vessels supplied or caused to be supplied by the Seller.

#### 2. MARINE FUEL QUALITY

Seller warrants that the Marine Fuels to be sold shall be the grades of Marine Fuel Oil, Marine Diesel Oil and/or Marine Gas Oil (collectively "**Marine Fuel**") offered at the time and place of delivery by Seller and meeting the specifications as referred to in the Order Confirmation and/or any applicable contract.  Buyer shall have sole responsibility for selection and acceptance of Marine Fuel, including determination of compatibility with its vessel's equipment and with Marine Fuel already on board the vessel, for use in the vessel to which it is delivered.  Buyer may inspect the Marine Fuel before it is pumped out of Seller's shore tank or barge.  Unless otherwise indicated to Buyer in writing by Seller, any information provided to Buyer regarding the characteristics of Marine Fuel at any delivery location shall not be construed as specifications of the Marine Fuel to be delivered hereunder, but only as indications of the characteristics of Marine Fuel available at that location from time to time. No off-specification Marine Fuel shall be delivered to the Buyer without a fully documented Product Quality Waiver in respect of supplies under any applicable term contract, or a Product Quality Exception in respect of other supplies in each case signed by the Buyer before delivery.

2019
THERE ARE NO GUARANTEES, CONDITIONS, REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE SATISFACTORY QUALITY, MERCHANTABILITY, FITNESS OR SUITABILITY OF THE MARINE FUEL FOR ANY PARTICULAR PURPOSE OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION AND SPECIFICATION AS SET OUT IN THE ORDER CONFIRMATION AND/OR ANY APPLICABLE TERM CONTRACT.

#### 3. QUANTITIES

The quantities of Marine Fuel ordered by the Buyer for delivery at various or specific ports shall be subject to availability and confirmation of supply by Seller. The quantity of Marine Fuel delivered shall be determined by the measurement means utilised by the barge effecting delivery or by gauging in Seller's shore tank or oil meter at Seller's election. Except where government regulations or local authorities determine otherwise, adjustment in volume owing to difference in temperature shall be made in accordance with API/ASTM-IP Petroleum Measurement Standards for Generalised Products (Table 6B, 24B or 54B depending on port location). In the measurement of Marine Fuel, Seller shall make allowance for all water in excess of half of one per cent (0.5%).  Buyer may be present or represented by a properly accredited agent when such measurements are taken, but if Buyer is not present or represented, then Seller's determination of quantities shall be deemed to be correct and binding.

Notwithstanding anything herein to the contrary, Seller's obligation to make any delivery hereunder is at all times subject to availability to Seller at the port at which delivery is requested, of the particular grade of Marine Fuel requested by Buyer.

## 4. PRICE AND OTHER CHARGES

Unless otherwise agreed in writing by Seller, the price of Marine Fuel delivered hereunder shall be the established selling price effective for the place of delivery at the time of completion of delivery by Seller, as the case may be, for the grade of Marine Fuel delivered.

Where price is based on an index quotation (e.g. Platts) ("**chosen index**") and when the day of completion of delivery falls on a day on which the chosen index quote is not available, i.e. weekend, public holiday or other, then the chosen index quotation to use in the calculation of the price shall be the last published chosen index quotation prior to the day of completion of delivery.

Unless otherwise agreed, where a price is set in the Order Confirmation and/or any applicable term contract which is based on using information from several days of the published chosen index, and quotations and a calculation of the price for a particular delivery includes a day on which the chosen index quote is not available e.g. weekend or public holiday or other, then the chosen index quotation to use in the calculation for each such non-quoted day shall be the last business day prior to the non-quoted day on which the chosen index quotation was published.

In the event the specific chosen index employed in the pricing formula is discontinued or no longer accurately reflects market conditions, the Seller shall have the right to renegotiate the price set in the Order Confirmation. Should the parties not be able to reach an agreement within thirty (30) days of the commencement of such negotiations, either party has the right to terminate this Agreement as to the Products and delivery location(s) affected by giving the other party at least fourteen (14) days' notice in writing.

Where Marine Fuel is: (i) intended for export use, (ii) imported under bond, or (iii) drawback Marine Fuel manufactured from imported crude oil, and is delivered for Buyer's account without payment by Buyer of the applicable sales or use tax, customs duty, tariff, fee or other charge thereon, Buyer shall be liable to reimburse Seller for any such tax or charge assessed, including interest and penalties thereon, or for any drawback denied after delivery by reason of failure by Buyer or the vessel to qualify therefore or to furnish the necessary proof within the requisite time period specified by applicable regulation or procedure.

If price controls are imposed, Seller shall not be required to deliver if the maximum price allowed is below that previously established with Buyer. If at any time a price provided hereunder shall not conform to the applicable laws, regulations or orders of a government and/or other competent authority, appropriate price adjustments will be agreed between the parties. Should the parties not be able to reach an agreement within thirty (30) days of the commencement of such negotiations, either party has the right to terminate the Agreement as to the Products and delivery location(s) affected by giving the other party at least fourteen (14) days' notice in writing.

In addition to the price, Buyer shall also pay all and any applicable taxes, duties, fees or other charges, including (without limitation) those imposed by government and/or authorities, barging and/or other delivery charges. To the extent allowed and where consistent with Seller's procedures, Seller shall show these taxes, duties, fees and other charges as separate items on the invoice for the account of Buyer. In the event of a legally required withholding tax, Buyer shall pay a grossed-up amount to Seller so that Buyer incurs the cost of withholding tax.

Seller will reasonably endeavour to keep Buyer informed at all times about the taxes, duties, fees and charges existing or to be charged to Buyer if possible. Failure to do so shall not be deemed to be a breach of, or default under this Agreement. In all cases including but not limited to where such information is inaccurate or incomplete, Buyer shall not be relieved of the obligation to pay. Buyer may, or at Buyer's request, Seller may at its discretion, as an applicable nominal party, take all actions necessary to contest the validity, applicability or any other like challenge with respect to the amount or application of such taxes, duties and charges (including but not limited to withholding of any tax) and may institute actions to recover past or anticipated payments thereof, provided, as to withholding of any tax, that Buyer gives Seller an indemnity which meets any reasonable requirement of Seller. Unless other arrangements are made, all actions taken in this respect shall be at Buyer's sole expense.

If Buyer is entitled to purchase any Marine Fuel sold pursuant to this Agreement free of any taxes, duties, fees or other charges, Buyer shall deliver to Seller a valid exemption certificate for such purchase. Buyer shall bear exclusive responsibility for and indemnify the Seller from and against any and/or all liability (ies) arising from the granting of such exemption(s).

## 5. NOMINATIONS

For each delivery, Buyer shall give Seller, unless otherwise requested by Seller, firm written nomination of its requirements for the Marine Fuel to the Seller not less than five (5) business days prior to its requested delivery date.

The nomination shall specify the name of the receiving vessel, details of vessel's agents, vessel's IMO number, estimated date and time of arrival, requested date of delivery, location and method of delivery and grade and quantity of Marine Fuel required. Buyer shall give to Seller at least forty-eight (48) hours (excluding non-business days) advance notice of the vessel name, the vessel IMO number, exact quantity and type of Marine Fuel required and exact location and time at which delivery is required.

Any changes to the nomination requirements must be notified by the Buyer to the Seller not less than forty-eight (48) hours prior to the time of the requested date of delivery. The Seller agrees to use all reasonable endeavours to accept in writing such notified changes to Marine Fuel requirements, quantity or date of delivery but shall not be held liable if unable to do so.

Buyer agrees to reimburse Seller for overtime and/or other additional expenses incurred due to the failure of Buyer to provide Seller with sufficient prior notice of changes to delivery time, quantity changes or cancellations (the provisions of Section 21(d) are specifically excluded for the purposes of cancellation(s) by the Buyer falling outside of Section 14).

Save and except for cancellation(s) by: (i) the Seller on account of US trade sanctions and/or embargos as set out in Section 19 below and/or (ii) either party on account of event(s) beyond either party's control (force majeure) as set out in Section 14 below, no cancellation is allowed following the issuance of an Order Confirmation.

In the event of Buyer's cancellation following issuance of an Order Confirmation, otherwise than as permitted above, then notwithstanding any provisions to the contrary, the Seller reserves the right to charge an order cancellation fee.

Buyer shall be liable for all costs, expenses and/or charges incurred by the Seller on account of the Buyer's failure, breach and/or non-compliance with its obligations under the agreed nomination provisions as set out herein including for the avoidance of doubt any cancellation of delivery caused as a result of Buyer, its servants or vessel's local agents' acts or omissions.

## 6. DELIVERIES

Vessels, including tankers, awaiting delivery of Marine Fuel will receive Marine Fuel in turn as promptly as circumstances permit but Seller shall not be liable for demurrage or for any loss due to congestion at the port facilities (comprising the delivering port/terminal including berths and pipelines etc.) or to prior commitments of available barges, or when in Seller's opinion clear and safe berth is unavailable. Delivery shall be made during Seller's normal working hours unless required at other times and permitted by local port or terminal regulations, in which event Buyer shall reimburse Seller for all additional expenses incurred. If a government permit is required for deliveries, no deliveries shall be made until the permit has been issued to Buyer or Seller as applicable. Seller may at its discretion amend method of delivery on written notice to Buyer.

At ports where barging facilities are available to Seller at current rates and on reasonable terms, delivery of Marine Fuel hereunder shall be made by barge provided by Seller to Buyer's vessel within normal harbour limits as established by Seller. When deliveries are made by barge, Buyer shall pay the applicable barging charges plus transportation taxes, if any (subject to minimum delivery provision), at port of loading, and pumping charges if required, to effect delivery. If in Seller's judgement the making of a barge delivery will cause a labour dispute with, or a strike by, its employees, Seller may refuse to make such deliveries and Buyer shall be required to provide its own barges. Deliveries of Marine Fuel provided by Seller by barge shall be charged on not less than ninety per cent (90%) of the quantity ordered. In the event Buyer fails to take delivery of the full quantity ordered of Marine Fuel either ex barge, ex tank truck or ex wharf, Seller will charge Buyer for all additional expenses including the amount of loss sustained by having to sell the Marine Fuel in down-graded form and/or at a lower price than that at which it was ordered. If Buyer, its servants or vessel's local agents cause delays to Seller's facilities in effecting deliveries, whether as a result of Buyer's, its servants or vessels local agents' acts or omissions, Buyer shall pay demurrage at Seller's established rates, and reimburse Seller for all other expenses in connection therewith.

Buyer shall remain responsible for all connections and disconnections between the delivery hose and vessel's intake pipe, and shall render all other necessary assistance and provide sufficient tankage and equipment to receive all deliveries hereunder promptly. In no case shall Seller be liable for any damage or delay resulting from causes beyond its control or avoidable by due care on the part of the Buyer.

Unless otherwise agreed in writing by Seller, the delivery date shall be deemed to be the date of completion of delivery as stated on the bunker delivery note provided to Buyer at time of delivery.

## 7. SAMPLES

Seller shall arrange for such number of representative samples of each grade of Marine Fuel delivered as are necessary to be taken in accordance with the then current version of ExxonMobil Marine Fuels Sampling Policy, unless otherwise directed by local regulations at the port of delivery. Buyer may witness such sampling. The samples shall be securely sealed and labelled in accordance with ExxonMobil Marine Fuels Sampling Policy of the port of delivery. An appropriate number of samples shall be provided to the Buyer in accordance with local regulations. All remaining samples shall be retained by Seller.

## 8. SAFETY

Buyer shall take all necessary measures and precautions to provide a safe environment for the vessel prior to and during the delivery of Marine Fuel. If, at any time prior to or during delivery, Seller reasonably determines that the environment for delivery is unsafe or has the potential for a Spill (as defined in Section 16 below) occurring due to conditions such as, but not limited to, unsafe working environment, lack of or insufficient practices/procedures, facilities, or use of tools/equipment, or incompatible configuration or bad weather, Seller reserves the right not to commence delivery or to terminate the supply immediately without any prior notice to Buyer whensoever and without liability. As between Seller on the one hand and Buyer on the other, Buyer shall be solely responsible for any loss or damage occurring on board or to the vessel resulting from any incident arising out of or in connection with, any such conditions.

## 9. TITLE AND RISK OF LOSS

All deliveries shall be deemed to be complete and title shall pass to Buyer when the Marine Fuel has reached the flange connecting the delivery facilities provided by Seller with the receiving facilities provided by Buyer at which point Seller's responsibility shall cease and Buyer shall assume all risk of loss, damage, deterioration or evaporation as to the Marine Fuel so delivered. The Marine Fuel shall be pumped at the risk and peril of Seller up to that flange only and thereafter Seller shall not be responsible for any loss or damage.

## 10. INDEMNITY

Buyer shall indemnify and hold Seller and/or its affiliated companies harmless against any losses, damages, costs or expenses (including reasonable attorneys' fees), which Seller and/or its affiliated companies may incur or for which they may become liable, arising out of breach of this Agreement, wrongful or negligent acts or omissions of Buyer and/or its servants and/or its agents and/or the receiving vessel in connection with any deliveries hereunder. Seller shall indemnify and hold Buyer harmless against any losses, damages, costs or expenses (including reasonable attorneys' fees), which Buyer may incur, arising out of the gross negligence and/or wilful default of Seller and/or its affiliated companies in connection with any deliveries hereunder.

Buyer shall indemnify, defend and hold harmless Seller and/or its affiliated companies from and against any claims, proceedings, losses, liabilities, costs and/or expenses (including reasonable attorneys' fees and litigation costs) arising out of or resulting from, or alleged to arise out of or to result from, the use, handling, storage, transportation or distribution of any Marine Fuels containing biodiesel sold hereunder ("Biodiesel Product") by Buyer or by any other person or entity subsequently taking possession or custody of, or title to, any Biodiesel Product sold, transferred and/or delivered hereunder to Buyer, including, but not limited to, claims that the Biodiesel Product is defectively designed or defectively composed or that Buyer or Seller (or their respective agents) failed to provide sufficient warnings about the Biodiesel Product, whether or not such claims result from or are contributed to by the negligence in any form of Seller, except that the indemnity obligations of this paragraph shall not apply to the extent that the Biodiesel Product transferred and/or delivered hereunder to Buyer was defectively manufactured by Seller.

Notwithstanding anything to the contrary in this Agreement each party shall bear full responsibility, without limit, for gross negligence or wilful misconduct and in no event will a party be required to release or indemnify the other party for gross negligence or wilful misconduct of itself and/or its agents, representatives, employees and/or contractors.

## 11. PAYMENT TERMS AND CHANGE IN FINANCIAL CIRCUMSTANCES

Unless government regulations require otherwise, Seller shall have the right to invoice Buyer for deliveries of Marine Fuel based upon facsimile or electronic advice or other tele-typewritten communication of delivery details in lieu of delivery documents. Delivery documents may be provided to Buyer if requested, but payment shall not be conditional upon Buyer's receipt of such documents. Unless otherwise agreed or stipulated by the Seller, payment shall be made by or on behalf of the Buyer in U.S. dollars without discount, deduction and/or set-off within the period of days from date of delivery as specified in the Order Confirmation and/or any applicable term contract, against presentation of Seller's invoice; by electronic transfer of funds to a bank in accordance with Seller's written instructions, for each delivery of Marine Fuel to any vessel upon any order (or notice) given by or on behalf of Buyer in which event such

orders shall at all times be deemed to be orders from the Buyer.  Where Seller re-issues an invoice for whatever reason, which exceeds the agreed payment period, payment shall be made by or on behalf of the Buyer within three (3) business days of the date of such re-issued invoice.

Payment shall be deemed to have been made on the date cleared funds are first available for use in the Seller's account at its designated bank. If payment due date falls on a non-business day, i.e. a weekend, public holiday or other on which Buyer's or Seller's bank is closed, then payment shall be made on or before the prior  business day to the payment due date.

If Buyer fails to pay any sum due hereunder which is not subject to a bona fide dispute and/or is in breach of any other term of this Agreement, Seller may, on giving written notice to Buyer, immediately suspend delivery of Marine Fuels hereunder and/or notify Buyer of such breach requiring remedy within a specified time failing which Seller may terminate this Agreement. Any such suspension or termination shall not relieve Buyer of its obligations hereunder.

In the absence of any specific agreement in writing between the parties, Seller reserves right to collect from Buyer late payment charges on overdue amounts or, if payments are not made in full and/or if Buyer's payment is not cleared by the Seller's bank by the due date, from payment due date to date payment is received, of a monthly rate of one and one-half percent (1.5%) or the maximum rate if any, allowable under applicable law, whichever is lower, with interest to be compounded monthly.

Seller may request at any time during this Agreement for Buyer to provide complete and reliable financial information (audited if available) and any other related information. Buyer shall use all reasonable endeavours to respond to such request in a timely manner.

Buyer represents to Seller that when Buyer takes delivery of the Marine Fuels, it is solvent and able to pay for such Marine Fuels. Notwithstanding any provision contained herein to the contrary, Seller reserves the right at its sole discretion upon written notice to Buyer to:

  (i)  revoke, revise or modify any and all terms and conditions of payment methods, payment terms or credit arrangements including requiring payment in advance; and/or

  (ii)  require some other financial security in an amount and type satisfactory to the Seller including but not limited to a letter of credit, bank guarantee, or parent company guarantee; and/or

  (iii)  suspend a delivery of a pending order until receipt of such payment or security, and to require immediate payment for Marine Fuel already delivered and/or prepayment or provision security.

Seller may also request that the form and/or the level of any financial security provided be varied at any time as it sees fit. Any such financial security provided by Buyer may not be withdrawn or cancelled by Buyer without prior written consent of Seller.

In the event that:

  (i)  Buyer is unable or unwilling to provide financial security acceptable to Seller; or

  (ii)  Buyer's financial condition in Seller's sole discretion is impaired; or

  (iii)  Buyer is unable to comply with payment methods, payments terms or credit arrangements in the manner prescribed above; or

  (iv)  the provisions of Section 18 (a)(i),(ii), (iii) or (iv)  apply,

Seller shall have the right to immediately suspend delivery of Marine Fuels hereunder and/or to terminate this Agreement with immediate effect on written notice to Buyer and all monies owed but not otherwise due shall become immediately due and payable.

Seller, or any affiliated or associated company of the Seller, also reserves the right whether or not there is a bona fide payment dispute or breach of payment obligations by the Buyer under this Agreement or any other agreement between the parties and/or their respective affiliated or associated company(s):

  (i)  to withhold any amounts Seller (or any affiliated or associated company of the Seller) is due to pay Buyer under this Agreement or any other agreement between the parties and/or their respective affiliated or associated company(s); and

  (ii)  to set off against such withheld amounts any amounts Seller or any affiliated or associated company of the Seller is due to receive from Buyer or any affiliated or associated company of the Buyer.

Any monies which the Buyer may have provided to Seller (or to any affiliated or associated company of the Seller) may be used by Seller to set off or satisfy all or any part of any debt or obligation of Buyer to Seller (or to any affiliated or associated company of the Seller).

Seller's exercise of any right reserved under this Section 11 shall be without prejudice to any claim for damages or any other right of Seller under this Agreement or applicable law. Buyer shall pay all costs incurred by Seller (including but not limited to attorneys fees and collection agency fees) in connection with this Agreement arising out of Buyer's failure to pay any amount due and owing to Seller hereunder.

## 12. CLAIMS

Buyer's rights in respect of any claim, including but not limited to claims relating to quantity, quality, and price, are conditional on written notice being given to Seller promptly after the circumstances giving rise to the claim are discovered, but in no event later than thirty (30) days following:

- the date of delivery; or
- the date of delivery as stated in the Order Confirmation, in the case of non-delivery,

(as applicable), after which time the claim will not be accepted.  Buyer's submission of any claim does not relieve it of responsibility to make payment in full as required under Section 11.

In the event Buyer notifies Seller of a legitimate claim as to quality, the parties shall have a sample retained by Seller analysed by a mutually-acceptable qualified and independent laboratory. The sample shall only be analysed for the Marine Fuel characteristic or component that the Buyer claims to be off specification. The analysis shall be established by tests in accordance with ISO 8217 (latest edition at time of delivery) and/or any other specifications agreed between Buyer and Seller. For interpretation of test results the method as set out in ISO 4259 Sections 9 and 10 in respect of precision and interpretation of test results shall be used. The results of the analysis shall be conclusive as to the quality of Marine Fuel delivered except in cases of manifest error. Unless otherwise agreed, the expenses of the analysis by the independent laboratory shall be borne by the party whose claim is unsupported by the test results.  In the event of any claim as to quality, Buyer shall permit Seller and/or its representatives to have access to all relevant documents and come on board and inspect the receiving vessel as part of its investigation of such claim on providing Buyer with reasonable notice.  Seller will not be responsible for any claim as to quality arising from the commingling of the Marine Fuel with other products or materials by Buyer on board the receiving vessel.

No product quality related claim shall be made in respect of supply of any Marine Fuel which is the subject of a documented Product Quality Waiver agreed between the parties prior to delivery in respect of supplies under any applicable term contract or a Product Quality Exception in respect of other supplies.

Should any timely claim submitted by Buyer not be settled to Buyer's satisfaction, any legal action brought by it thereon shall be time-barred unless commenced within six (6) months:

- after the date of delivery; or
- in the case of non-delivery, after the date of delivery as stated in the Order Confirmation.

This provision shall survive any termination of this Agreement arising between Seller and Buyer.

Without prejudice to Buyer's obligation under Section 2, Buyer acknowledges its legal duty to mitigate its losses. For the avoidance of doubt, Buyer shall take reasonable measures to mitigate any loss and/or damage arising from any alleged claim(s) under this Section. The Seller expressly excludes any liability arising from Buyer's failure to comply with its legal and/or contractual duty to mitigate.

## 13. COLLECTION

Deliveries of Marine Fuel hereunder are made not only on the credit of the Buyer but also on the faith and credit of the vessel which uses the Marine Fuel and it is agreed that Seller will have and may assert a lien against such vessel for the amount of the delivered price of said Marine Fuel.  Additionally, the Seller will have and may assert a lien for the said amount of the delivered price against such vessel or associated vessels, should the laws applicable at the place of Seller's address, at the place of delivery of the Marine Fuel and/or at the place of seizure of such vessel, grant or recognise a lien for Marine Fuel delivered to a vessel or associated vessels.  All costs associated with the seizure of the vessel or associated vessels shall be for the Buyer's account. Taking of any additional security measures by Seller shall not operate as a waiver of this provision. For the avoidance of doubt, the Buyer shall not be entitled to cancel the effect of the lien by wording on the delivery ticket or otherwise.

## 14. FORCE MAJEURE

In addition to the provisions of Section 6 (Deliveries) and to any other reasons (arising out of the same or other causes) provided by law, or Seller's cooperation with governmental or relevant port authorities, no failure or omission by either party to carry out or observe any of the provisions or conditions of these GCC 2019 and/or any applicable term contract shall give rise to any claim against that party, or be deemed to be a breach of contract, if the same shall arise out of causes not reasonably within the control of that party, whether or not foreseen, including (without limitation) such causes as compliance with any order or request by a governmental authority or regulator, labour disputes, strikes, governmental intervention, terrorist actions (threatened or actual), wars, civil commotion, fire, flood, accident, storm or any act of God; or when the supply of Marine Fuels or any constituent thereof or any facility of production, manufacture, storage, transportation, distribution or delivery contemplated by Seller is interrupted, unavailable or inadequate for any cause whatsoever which is not within the reasonable control of Seller, acts of the public enemy, sabotage, diminishment or failure of power, telecommunications, data systems, or networks of Seller. The term "party" when used with reference to Seller shall also include Exxon Mobil Corporation and its subsidiary and affiliated companies. Notwithstanding any other notice requirement in this Agreement, actual notice (e.g., phone, text, email, letter) to a counterparty of a delay or failure described in this provision will constitute effective notice for purposes of this provision.

Under no circumstances, however, shall Buyer be excused from its obligation to pay all amounts due for Marine Fuel actually delivered. For the avoidance of doubt, a party's inability to pay a debt under this Agreement in the currency agreed shall not constitute a force majeure event under this Section 14.

A party affected by events described in this Section 14 shall give prompt notice to the other party describing in sufficient detail the events and the estimated scope of such disability

## 15. SHORTAGE OF MARINE FUEL SUPPLY

If, as a result of any of the events, matter or things referred to in Section 14, or any other foreseeable or non-foreseeable event, including contractual changes relating to the supply of crude oil and/or petroleum products from which Marine Fuel of the type to be sold hereunder is derived, Seller has reason to believe supplies of Marine Fuel will be curtailed, or available to Seller only under conditions which, in Seller's sole judgement are deemed unacceptable to meet demands of all its customers, Seller may allocate, on any fair and reasonable basis according to its own discretion its available supplies of Marine Fuel to meet its own requirements and those of its subsidiaries and affiliated companies and other customers, including Buyer and, at Seller's option, other customers; and Seller shall not be required to increase supplies from some other source of supply or to purchase Marine Fuel to replace the supplies so curtailed.

No party affected by any cause(s) described in Sections 14 and 15 herein shall be required to remove such cause(s) if doing so would cause any additional expense. Seller shall not be obligated to purchase additional supplies of Marine Fuel or to make up deliveries omitted during the period of disruption, nor will the term of this Agreement be extended due to the causes set out in Sections 14 and 15 herein.

## 16. ENVIRONMENTAL PROTECTION

If an escape, spillage or discharge of Marine Fuel ("**Spill**") occurs while Marine Fuel is being delivered to Buyer hereunder, Buyer will promptly take such action as is reasonably necessary to remove the Marine Fuel and mitigate the effects of such Spill. However, notwithstanding the cause of such Spill, Seller is hereby authorised, at its option, upon notice to Buyer (including without limitation any operator for the receiving vessel), to take such measures, either in co-operation with Buyer, or exclusively as the sole party, and incur such expenses (whether by employing its own resources or by contracting with others) as are reasonably necessary, in the judgment of Seller, to remove the Marine Fuel and mitigate the effects of such Spill.

If Seller has exercised its option to remove the Marine Fuel and mitigate the effect of such Spill, Buyer agrees to cooperate and render such assistance as is required by Seller in the course of such action. Any expenses, damages, costs, fines and penalties arising from escape, spillage, discharge or pollution of Marine Fuel shall be paid by the party that caused or contributed to the Spill by negligent act(s) and/or omission(s). If both parties have acted negligently, any expense(s), disbursement(s) and/or cost(s) in respect of actions to remove such Spill shall be divided between the parties in accordance with the respective degree of negligence and culpability. Each party agrees to indemnify the other party and to hold it harmless against all expenses, disbursement(s) and/or cost(s) which under this Section 16 are stated to be for the account of the indemnifying party. Buyer also agrees to give, or cause to be given, to Seller, all such documents, and other information concerning any Spill, or any program for the prevention thereof, which are requested by Seller, or required by law or regulation applicable at the time and place where Seller delivers Marine Fuel to Buyer.

### 17. GOVERNING LAW AND SUBMISSION TO JURISDICTION

Except as otherwise agreed between the parties, these GCC 2019 and/or any applicable term contract shall be governed by the laws applicable in the State of New York, without prejudice to Seller's right to enforce maritime liens in any appropriate jurisdiction. Each party expressly submits itself to the non-exclusive jurisdiction of the courts of the State of New York situated in New York County and the Federal courts situated therein for the purpose of resolution of disputes arising hereunder and/or any applicable term contract. Each of the parties hereby irrevocably waives actual personal service of process in connection with any action initiated in any court to whose jurisdiction the parties have by agreement submitted, relating to matters described in the preceding provisions in this Section 17, and agrees in lieu of personal service, to written notice of such action being given by the modes described in Section 21(a) below.

The United Nations Convention on Contracts for the International Sale of Goods shall not apply.

Save and except for Seller's rights to proceed against masters, owners, demised charterers and/or operators of vessels supplied by Seller, These GCC 2019 and/or any applicable term contract do not create any rights which are enforceable by any person who is not a party thereto.

Seller's exercise of any right provided by this Agreement shall be without prejudice to any claim for damages or any other right of Seller under this Agreement or applicable law.

### 18. TERMINATION

    (a)   Without prejudice to its other rights and remedies, whether already contained in these GCC 2019 or an applicable term contract or by law or otherwise, the Seller shall have the right to terminate this Agreement effective immediately upon giving written notice to Buyer in the event;

        (i)   of a continuing or material breach (including, without limitation, anticipatory breach) by the Buyer of any of the terms and conditions of this Agreement or any agreement to which Seller's subsidiary or affiliated companies are party to (without prejudice to the foregoing, such material breach may comprise of any sum payable under this Agreement when due or a failure to lift or accept delivery over a prolonged period and, in the case of such a breach which is capable of remedy, fails to remedy the same within thirty (30) days after receipt of a written notice giving full particulars of the breach and requiring it to be remedied of time); or

        (ii)  the Buyer makes an assignment for the benefit of creditors or any general arrangement with creditors, or if there are instituted by or against Buyer, proceedings in bankruptcy or under any insolvency law or law for reorganisation, receivership or dissolution or if in Seller's opinion there is some other deterioration of Buyer's financial position including failure to provide required security under Section 11 above; or

        (iii) the Buyer, or any shareholder of the Buyer, or of any holding company of the Buyer sells, transfers or parts either directly or indirectly with the ownership of any of the shares therein and where Seller's agreement has not been obtained and where in Seller's judgement Seller's commercial interests might be adversely affected.

    (b)   Buyer shall have the right to terminate this Agreement effective immediately upon giving written notice to Seller:

        (i)   in the event of a material breach (including, without limitation, anticipatory breach) by the Seller of any of the terms and conditions of this Agreement and, in the case of such a breach which is capable of remedy, fails to remedy the same within thirty (30) days after receipt of a written notice giving full particulars of the breach and requiring it to be remedied; and/or

        (ii)  in the event the Seller makes an assignment for the benefit of creditors or any general arrangement with creditors, or if there are instituted by or against Seller proceedings in bankruptcy or under any insolvency law or law for reorganisation, receivership or dissolution.

In addition to the above, both parties recognize that changes in laws including without limitation, environmental laws and regulations, relating to any products sold pursuant to this Agreement the effect of which changes, regardless of the date of the change, occur after the effective date hereof may require more stringent product quality and handling specifications than those effective on the date of execution by Seller (or upon the date of receipt and acceptance of this Agreement by Buyer whichever is later) with respect to laws applicable to Marine Fuels sold pursuant to this Agreement. In the event such laws applicable to such Marine Fuels become effective during the term of this Agreement and the parties are unable to reach a mutually agreeable solution within thirty (30) days, either party may, upon fourteen (14) days prior written notice to the other party, terminate this Agreement, or any part or subpart thereof.

Termination of this Agreement shall be without prejudice to the Seller's rights in respect of Marine Fuel delivered hereunder prior to the date of termination and in respect of any antecedent breaches. In the event that this Agreement is terminated pursuant to the terms of this Section 18, all sums payable to Seller on any account whatsoever will immediately become due and owing by the Buyer to the Seller regardless of agreed and/or applied credit terms under this Agreement.

## 19. EMBARGOES AND TRADE SANCTIONS AND COMPLIANCE WITH LAWS

(a)   Seller is bound by US and/or international economic sanctions or trade restrictions and embargo laws and expressly reserves the right at any time, without liability, to terminate any agreement including this Agreement (whether term contract or otherwise), and/or not to fuel or deliver to vessels, carrying flags of any country(s) which are subject to United States, European Union, United Nations and/or international economic sanctions or trade restrictions and/or embargoes. Both parties agree to comply with all laws, statutes, or regulations in force or as amended from time to time. Notwithstanding anything in this Agreement to the contrary, no provision shall be interpreted or applied so as to require a party to do, or refrain from doing, anything which would constitute a violation, or result in a loss of economic benefit under the United States anti-boycott and/or other export and/or economic sanctions or trade laws and/or regulations and/or any other applicable United States, European Union or national laws.

(b)   Each party agrees and confirms it will secure agreement by its contractors and affiliates to comply with any law or regulation applicable to this Agreement (including those pertaining to sanctions and export controls). Each party represents to the other party that;
   (1)      the execution, delivery and performance of this Agreement (including the Buyer's ability to resell or otherwise transfer the Marine Fuel) does not violate or conflict with any law or regulation applicable to it or its contractors or affiliates; and
   (2)      each party and its contractors or affiliates are, in connection with this Agreement, with respect to sale, export, re-export or other transfer of the Marine Fuels in compliance with all relevant laws and regulations including, for the avoidance of doubt, any economic sanction or trade restriction imposed by any law or regulation of the United States of America or the United Nations including, without limitation, those administered by the Office of Foreign Asset Control of the United States Treasury Department, and any other applicable laws imposing economic sanctions or trade restrictions.

(c)   Each party further represents that its execution, delivery and performance of this Agreement with respect to the sale, export, re-export or other transfer of the Marine Fuels do not or will not cause the other party to violate or be in conflict with any law or regulation applicable to it or its contractors or US affiliates or suffer penalty under any such applicable laws or regulations.

## 20. CONFIDENTIALITY AND DATA PROTECTION

The Buyer expressly agrees that the terms of any sale of Marine Fuel between the Buyer and Seller are strictly confidential as well as any non-public, financial or trading information relating to or arising from this Agreement which the Buyer may receive or obtain as a result of being a party hereto ("**Confidential Information**"). Buyer undertakes to keep confidential, not communicate, disclose or otherwise make the Confidential Information available to any third parties including but not limited to brokers, traders and/or reporting indices such as Platts, Petroleum Argus, Bunkerworld and the like.

Buyer shall not make use of or disclose to any person other than in the performance of its obligations hereunder or as required by law or by financial reporting requirements, or communicate to any person or use or exploit for any purpose whatsoever the Confidential Information.

Seller will use any company or personal data it receives in connection with the Buyer (and its related and/or companies/entities managed by and/or affiliated to the Buyer) to create or update records held by Seller and any members of the ExxonMobil Group (meaning Exxon Mobil Corporation and all or any of its subsidiary and affiliated companies from time to time) for the purposes of keeping accounts and records, product supply and product market analysis, credit analysis and statistical compilation. The Seller may make enquiries at any time in relation to the Buyer or its affiliated companies with third parties, including, without limitation, banks, credit reference agencies and other suppliers to the Buyer, all or any of which may keep a record of the Seller's enquiry whether or not credit is granted. Whether or not credit is granted and where an application for credit is in the process of being considered, the Seller may also disclose details about the Buyer's account within the ExxonMobil Group which may involve affiliated companies outside of the European Union.  The Seller will use its reasonable endeavours to ensure that details about the Buyer which are held by the Seller will not be accessible by third parties outside the ExxonMobil Group. In accordance with applicable laws, the Buyer has a right to access and rectify Buyer's personal data, by written notice to the Seller.

In this paragraph references to "the Buyer" shall be deemed to include (but without limitation) the Buyer's and/or its affiliated companies officers, employees, contractors and agents in relation to which the Seller receives personal data arising out of or in connection with the Buyer's dealings with the Seller and other members of the ExxonMobil Group.

## 21. ADDITIONAL PROVISIONS

(a) **NOTICES**: All notices and other communications required under this Agreement shall be in writing and shall be sent to Seller at the address set out in Section 1. Notices shall be delivered by hand, by electronic mail, by pre-paid first class mail or by facsimile transmission with hard copy to follow by hand or pre-paid first class post, and shall be deemed given at the expiration of the normal delivery time. Unless otherwise indicated by Buyer in writing, notices hereunder shall be sent to Buyer at the address designated by Buyer for invoicing as set out in the Order Confirmation and/or any applicable term contract.  Either party may change its address by giving fifteen (15) days' prior written notice of its new address to the other party.

(b) **STRICT PERFORMANCE: WAIVER**: The right of either party to require strict performance shall not be affected by any prior waiver or course of dealing and any such prior waiver shall not be construed as a waiver of any succeeding breach of the same or any other covenant or condition. All rights and remedies are cumulative, and election of one remedy shall not exclude another. No waiver by any party of any provision or part of any provision of this agreement shall be binding unless expressly confirmed in writing.

(c) **ASSIGNMENT**: Assignment of any right or delegation of any obligation hereunder by Buyer shall require Seller's prior written consent. Seller may from time to time without need for prior consent of Buyer, assign any of its rights or delegate any of its obligations hereunder to any party including an affiliated or subsidiary company or such other supplier, in which event any such assignee shall enjoy and be entitled to exercise against Buyer any and all rights herein conferred upon Seller.

(d) **LIMITATION OF LIABILITY**: NO CLAIM SHALL BE MADE AND NO RECOVERY SHALL BE HAD HEREUNDER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY, INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR FOR LOSS OF ACTUAL, PROJECTED AND/OR PROSPECTIVE PROFITS, ANTICIPATED COST SAVINGS, CONTRACTS OR FINANCIAL OR ECONOMIC LOSS.

(e) **PERFORMANCE WARRANTY**: There is no implied warranty of workmanlike performance with respect to these GCC other than services provided by employees of the Seller in conjunction with the delivery of Marine Fuel as provided in these GCC 2019.

(f) **ENTIRE AGREEMENT AND GOVERNING TERMS**: These GCC 2019 together with the Order Confirmation and/or any applicable term contract contains the entire agreement of the parties with respect to the subject matter hereof and there are no other promises, representations or warranties affecting it unless expressly agreed to in writing by the Seller.  No conduct by the Seller, its affiliates or agents shall be deemed to constitute acceptance of any terms put forward by the Buyer. These GCC 2019 shall not be modified or amended in any way except in writing by the parties. These GCC 2019 (which supersede any earlier GCC versions issued by Seller), shall prevail over any terms and conditions or other addenda stipulated, incorporated or referred to or put forward by the Buyer, unless the Seller expressly agrees to such other of those terms in writing.  Headings are included as a reference only and shall not in any way affect the meaning or interpretation of this Agreement.

(g) **SEVERABILITY**: Should any provision hereof be finally determined to be inconsistent with or contrary to applicable law, such provision shall be deemed amended or omitted to conform therewith without affecting any other provision hereof or the validity of these GCC 2019 and/or any applicable term contract and the rights and obligations of the parties shall be construed and enforced accordingly.

(h) **PRINCIPAL/AGENT**: If any order shall be placed by an agent for a principal as Buyer hereunder, then such agent shall be liable not only as agent but also liable jointly and severally for the performance of all obligations of the principal hereunder.

(i) **BROKER COMMISSIONS**: Where sales are concluded through a broker or an agent, commissions may be paid by Seller to such broker or agent. Any brokers' commission payable by Seller shall only be paid after confirmation of receipt of full outstanding invoice amounts without setoff into Seller's instructed bank under Section 11 above.

(j) **ACCURACY OF RECORDS**: Both parties agree that all financial settlements, billings and reports rendered to the other party or its representatives shall reflect properly the facts about all activities and transactions under this Agreement. Both parties agree to notify the other party promptly upon discovery of

any instance where the first mentioned party fails to comply with this Section. If a party discovers or is advised of any errors or exceptions related to its invoicing, both parties will together review the nature of the errors or exceptions, and the defaulting party will, if appropriate, promptly take corrective actions and adjust the relevant invoice or refund overpayments.

(k) **BUSINESS STANDARDS: BRIBERY & CORRUPTION:** Without limiting the generality of any of the provisions in this Agreement, and in recognition of the principles of the OECD Convention on Combating Bribery of Foreign Public Officials in International Business Transactions, the United Nations Convention Against Corruption, the United Sates Foreign Corrupt Practices Act 1977 and the UK Bribery Act 2010 both Buyer and Seller represent and agree that each shall not directly or indirectly in connection with this Agreement offer, pay, promise to pay or authorise the giving of money or anything of value to a government official (whether appointed, elected or honorary, or a career government employee) in connection with this Agreement or to any other person while knowing or suspecting that all or a portion of such money or thing of value will be offered given or promised directly or indirectly to a government official (whether appointed, elected or honorary, or a career government employee) for the purposes of influencing the act, decision or omission of such official (whether appointed, elected or honorary, or a career government employee) to obtain or retain business related to this Agreement or to obtain an improper advantage or benefit.

Buyer and Seller further agree that each shall establish and maintain appropriate business standards. Each party shall exercise reasonable care and diligence to avoid any real or apparent impropriety or to prevent any actions or conditions which could result in a conflict with any other party's best interests with respect to this Agreement. This obligation shall apply to the activities of the employees and agents of one party in their relations with the employees and agents of any other party, and of third parties who perform or assist in the performance of services under this Agreement. The parties' effort shall include, but not be limited to, establishing precautions to prevent their respective employees agents or representatives or include, but not limited to, establishing precautions to prevent their respective employees agents or representatives from making, receiving, providing or offering substantial gifts, extravagant entertaining, payments, loans or other considerations for the purpose of influencing any individual to act contrary to any party's best interests with respect to this Agreement.

(l) **DRUG AND ALCOHOL**: In the event Buyer takes delivery of Marine Fuel product from Seller's facilities, the provisions of this Section shall apply. Buyer and Buyer's employees, agents and contractors shall not enter Seller's facilities while under the influence of alcohol or any controlled substance. Buyer, its employees, agents and contractors shall not use, possess, distribute or sell illicit or unprescribed drugs in connection with any activity performed hereunder. Buyer, its employees, agents and contractors shall not use, possess, distribute or sell alcoholic beverages at any time while performing activities hereunder. Buyer has adopted or will adopt its own policy to assure a drug and alcohol free workplace while performing activities hereunder and Buyer will remove any of its employees, agents or contractors from performing activities hereunder any time there is suspicion of alcohol or drug use, possession or impairment involving such employee, agent or contractor, and at any time an incident occurs in performing activities hereunder where drug or alcohol use could have been a contributing factor. Buyer will comply with all applicable federal, state, and local drug and alcohol related laws.

(m) **PRODUCT DISCONTINUANCE**: Seller may discontinue, or cause to be discontinued without liability, the sale at any port of any Marine Fuel, but if Seller shall sell or cause to be sold at such port another product or grade of Marine Fuel of substantially the same quality, it shall be substituted for the one discontinued. The pricing for such substituted product shall be the same as for the discontinued product. Seller may elect to discontinue operations at any delivery location for any reason without obligation to Buyer.

(n) **TRADEMARKS**: Nothing contained in these GCC 2019 confers upon the Buyer the right to use Seller's trademarks, trade or brand names.

(o) **REACH**: Where applicable, Seller is aware of the Reach Regulation 1907/2006/EC (REACH) and will comply with its requirements. Seller represents and warrants that all substances, wherever sourced, that are contained in the Marine Fuel and that are required to be registered under REACH, have been properly registered. Upon request, Seller shall provide appropriate documentation thereof.

# EXHIBIT 2

ExxonMobil
Lubricants & Petroleum Specialties Company
22777 Springwoods Village Parkway
Spring, Texas  77389



December 28, 2018

BOUCHARD TRANSPORTATION COMPANY

58 SOUTH SERVICE ROAD SUITE 150

MELVILLE, NEW YORK, 11747

Dear ExxonMobil Customer:

A recent review of our records indicated that you have been purchasing various lubricant products from ExxonMobil Oil Corporation.  We wanted to ensure that you have a copy of our written document detailing our terms and conditions covering these purchases.

To avoid any potential misunderstanding, we have attached the ExxonMobil Oil Corporation Marine Terms and Conditions of Sale to this letter. These Terms and Conditions of Sale apply to any purchases of lubricant products unless otherwise documented by both parties.  Placement of an order and ExxonMobil's acceptance of order constitutes agreement with ExxonMobil's Marine General Terms and Conditions of Sale.  All sales of products by ExxonMobil Oil Corporation are subject to these terms.  These terms may not be modified in full or part and any counter-offer by Buyer will not be applicable to the terms of sales unless expressly agreed to in writing.

If you have any questions regarding these Terms and Conditions of Sale, please contact your Sales Representative.

Thank you.

Dwayne Campbell Marine Sales Manager Americas

On Behalf of ExxonMobil Oil Corporation

Marine General Terms & Conditions of Sale

# EXXONMOBIL MARINE LUBRICANTS
## STANDARD TERMS & CONDITIONS

These **Standard Terms and Conditions** apply to any delivery of ExxonMobil Marine Lubricants by ExxonMobil Oil Corporation unless modified by a sales contract.

1.      **DEFINITIONS:** The following words and expressions have the following meanings in these Standard Terms & Conditions:

"Affiliate" means (1) Exxon Mobil Corporation or its successors-in-interest, (2) any parent corporation, partnership, or other entity of the Exxon Mobil Corporation or its successors-in-interest which now or hereafter owns or controls, directly or indirectly through one or more intermediaries, more than fifty percent (50%) of the ownership interest having the right to vote for or appoint directors of Exxon Mobil Corporation or its successors-in-interest ("Parent Company"), and (3) any corporation, partnership, or other entity, regardless of where situated, more than fifty percent (50%) of whose ownership interest having the right to vote for or appoint directors is now or hereafter owned or controlled, directly or indirectly through one or more intermediaries, by Exxon Mobil Corporation or its successors-in-interest or by its Parent Company.

"Agents" includes the servants or employees of the Seller, any distributor authorized by the Seller, or any supplier authorized by the Seller.

"Buyer" means the person or entity purchasing marine lubricants.

"Delivery" means, in the case of Product in drums or other containers, physical delivery by Seller to Buyer's vessel, alongside Buyer's vessel, or to Buyer's agent or, in the case of pump-over of Product from a barge or shore facility, the moment when the Product exits Seller's or its supplier's delivery equipment into Buyer's vessel's intake flange.

"Product" means lubricating oils, greases, and other marine lubricating products sold under a brand owned by Seller or its Affiliates.

"Seller" means ExxonMobil Oil Corporation with offices at 22777 Springwoods Village Parkway, Spring, Texas 77389.

Unless the context does not so admit, reference in these Standard Terms & Conditions to the singular includes reference to the plural and vice versa.

2.      **DELIVERY AND RISK OF LOSS:** Delivery of Product is subject to   (There is no Ports and Services Guide for the Domestic business)

   (a)      Responsibility for loss of, damage to, or liability arising out of the use or misuse of, or in any way related to, the Product will pass to the Buyer upon Delivery.

   (b)      Title in the Product will pass to the Buyer upon Delivery.

3.      **PAYMENT:** Unless otherwise agreed in writing, payment will be made without discount, withholding, setoff, or deduction in U.S. Dollars to Seller by wire transfer, ACH or check to a bank as directed by Seller, within net 30 days of invoice date or

the period agreed by the Parties. Buyer will be responsible for all applicable taxes, duties, fees, or other charges imposed by any government authority, regardless of whether such taxes, duties, fees, or other charges are accurately stated on any invoice provided by the Seller. In the event payment is not made by the time and in the manner prescribed, Seller has the right to suspend any further deliveries and to notify Buyer that payment not yet made for any delivery by Seller is immediately due and payable. Without prejudice to any other rights of Seller and at its option, Seller is entitled to apply the amount of any monies which may then be or thereafter become owing from Seller to Buyer in satisfaction of any obligation owing by Buyer. Overdue payments will bear interest at the rate of one percent (1%) per month, or any part thereof, to the extent permitted by applicable local law, unless Buyer and Seller have agreed in writing to some other rate. Should Buyer fail to comply with the credit terms, and/or should Buyer's financial condition, in Seller's sole discretion, be impaired, Seller reserves the right to modify credit and payment terms, require some other financial security in an amount and type satisfactory to the Seller including but not limited to a letter of credit, bank guarantee or parent company guarantee. Sales are made on the credit of the receiving vessels as well as on Buyer's promise to pay, and amounts due shall immediately upon Delivery become a maritime lien against each such vessel in favor of Seller.  Seller may request at any time for Buyer to provide complete and reliable financial information, audited if available, and any other related information.  Buyer shall use all reasonable endeavors to respond to such request in a timely manner.

4.    **CLAIMS:** Any claim for deficiency in quantity or quality of the Product is waived unless Buyer, within thirty (30) days after Delivery, gives written notice of such claim to Seller and, where practicable, gives Seller or its agents an opportunity to inspect the Product(s) in question. Any claim by Buyer of any other kind based on or arising out of these Standard Terms & Conditions or otherwise is waived unless Buyer gives written notice to Seller within thirty (30) days after the event, action, or inaction to which such claim relates. Any claim by Buyer of any kind based on or arising out of these Standard Terms & Conditions  is barred unless asserted by Buyer with the commencement of an action against Seller within twelve (12) months after Delivery or other event, action, or inaction to which such claim relates.

5.    **INDEMNITY:**  Buyer shall indemnify and hold Seller, its Affiliates, and its Agents harmless against any losses, damages, costs or expenses (including reasonable attorney fees) that Seller, its Affiliates, or its Agents may incur or for which they may become liable arising out of the wrongful or negligent acts or omissions of Buyer, its Affiliates, or its Agents or of the receiving vessel in connection with any sale, purchase, or delivery of Product pursuant to these Standard Terms & Conditions.

6.    **ENVIRONMENTAL PROTECTION:** If an escape, spillage, or discharge of Product (a "Spill") occurs while Product is being delivered to Buyer, Buyer will promptly take such action as is reasonably necessary to remove the Product and mitigate the effects of such Spill. However, notwithstanding the cause of such Spill, Seller is hereby authorized, at its option and upon notice to Buyer, to take such measures, either in cooperation with Buyer or otherwise, and incur such expenses (whether by employing its own resources or by contracting with others) as are necessary in the sole discretion of Seller to remove the Product and mitigate the effects of such Spill. If Seller has exercised its option to remove the Product and mitigate the effect of such Spill, Buyer agrees to cooperate and render such assistance as is required by Seller in the course of such efforts.  Any expenses, damages, costs, fines and penalties arising from the Spill of Product shall be paid by the Party that caused or contributed to the Spill by negligent act(s) or omission(s); if both parties have contributed to the Spill by negligent act(s) or omission(s), any expenses, disbursement(s) or costs related the efforts to remove the effects of such Spill will be divided between the parties in accordance with their respective degree of negligence and culpability. Each Party agrees to indemnify the other Party and to hold it harmless against all expenses, cost(s) and disbursements which under this Clause 6 are the responsibility of the indemnifying Party.  Buyer also agrees to give or cause to be given to Seller, its Affiliates, or its Agents all documents and other information concerning any Spill or any program for the prevention thereof that may be requested or required by law, regulation, court order, or subpoena from any government authority, .

7.    **WARRANTY AND LIMITATION OF LIABILITY:**

    (a)    Seller warrants that at the time of shipment from Seller's facilities, the Products meet the specifications set forth in Seller's Product Data Sheets. THERE ARE NO GUARANTEES OR WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR SUITABILITY OF THE PRODUCT FOR ANY PARTICULAR PURPOSE OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION OR SPECIFICATIONS OF THE PRODUCT IN THE SELLER'S PRODUCT DATA SHEETS. The Product quality, specifications and health and safety information are contained in the Product Data Sheets and Safety Data Sheets respectively, both available and accessible through the Seller's website namely, www.exxonmobil.com.

    (b)    This warranty is given instead of, and excludes, all other express or implied conditions, warranties or other contractual undertakings which might otherwise arise at common law or under any statute concerned with any of the following:

        (i)      the condition or quality of the goods;
        (ii)     their fitness for any particular purpose; or
        (iii)    their compliance with any description.

    (c)    If Product is proved not to meet the specifications set forth in Seller's Product Data Sheets the Seller may, at its option, either replace it at the next mutually convenient port where supplies can reasonably be made available or

refund any sums paid by the Buyer for the Product. The Buyer shall accept such replacement or repayment in satisfaction of all claims it may have in respect of the defects.

(c)     Neither Party will be liable to the other Party in contract, tort, negligence, breach of statutory obligation, or otherwise for any loss, damage, costs, or expenses of any nature whatsoever incurred or suffered by that other Party of an indirect or consequential nature or for any economic loss or other loss of turnover, profits, business or goodwill. Neither will either Party be subject to punitive damages for any liability arising from the activities covered by these Standard Terms & Conditions.

8.      **CONTINGENCIES:** Seller, its Affiliates, and its Agents are not liable for loss, damage, or demurrage due to any delay or failure in performance (a) because of compliance with any order or request of any governmental authority or (b) when the supply of Product or any constituent thereof or any facility of production, manufacture, storage, transportation, distribution, or delivery contemplated by Seller, its Affiliates, or its Agents is interrupted, unavailable, or inadequate for any cause whatsoever which is not within the reasonable control of Seller. Seller, its Affiliates, and its Agents are not required to remove any such cause or replace any affected source of supply or facility if doing so involves additional expense or a departure from Seller's or its suppliers' normal practice. In the event Seller is unable to supply Product at a port regularly visited by Buyer's vessel(s), the Parties will seek a mutually acceptable solution for an alternative port of supply.

If Seller, its Affiliates, or its Agents at any time or for any reason believe that there may be such a shortage of supply that Seller may be unable to meet the demands of all of its customers of all kinds, Seller, its Affiliates, and its Agents may allocate Seller's available and anticipated supplies among the customers in a fair and equitable manner as determined in Seller's sole discretion. Seller, its Affiliates, and its Agents are not required to make up any deliveries not effected in accordance with this clause. Buyer is not liable for failure to receive Product if prevented from receiving or using already-ordered Product in its customary manner by any cause beyond its reasonable control, provided that nothing  excuses Buyer from full and timely payment for any and all Product that has been delivered.

9.      **BUSINESS STANDARDS:** Buyer and Seller shall establish policies and procedures designed to prevent their employees and sub-contractors from making, receiving, providing, or offering any unreasonable gifts, entertainment, or other things of value to the other Party's employees, their families, or any third parties, including government officials, in connection with the sale, purchase or delivery of Product pursuant to these Standard Terms & Conditions.

10.     **ACCURACY OF RECORDS:** Both Parties agree that all financial settlements, billings, and reports rendered to the other Party or its representatives shall correctly reflect the facts about all activities and transactions pursuant to these Standard Terms & Conditions. Both Parties agree to notify the other Party promptly upon discovery of any instance where the first-mentioned Party fails to comply with this clause. If a Party discovers or is advised of any errors or exceptions related to its invoicing, both parties will together review the nature of the errors or exceptions, and the defaulting Party will, if appropriate, promptly take corrective actions and adjust the relevant invoice or refund overpayments.

11.     **COMPLIANCE WITH LAW:**

*Each Party undertakes to the other:*

   (i)   *that the execution and performance of its obligations relating to this transaction do not violate or conflict with any law applicable to it or with any order of any governmental or regulatory body or any contractual restriction binding upon it; and*

   (ii)  *that it has complied with and will comply with all laws, regulations, orders, and requirements of all competent authorities relating to the performance its duties relating to the matters covered by these Standard Terms & Conditions.*

Notwithstanding anything in these Standard Terms & Conditions to the contrary, no provision will be interpreted or applied so as to require either Party to do, or refrain from doing, anything which would constitute a violation of, or result in a loss of economic benefit under, United States Anti-Boycott and other export laws and regulations. Buyer agrees that it will not purchase Product from Seller for or in connection with any vessel that is, at the time of the purchase:

   (i)   flagged in a U.S.-sanctioned country (currently Cuba, Iran, Syria, Sudan, and North Korea);

   (ii)  owned, operated, or managed by, or under time charter to:

      (A)  a U.S.-sanctioned country;

      (B)  a company organized under the laws of or that is operating from or is a resident of a U.S.-sanctioned country or Crimea; or

      (C)  a party on the List of Specially Designated Nationals and Blocked Persons (the "SDN List") published by the U.S. Treasury Department's Office of Foreign Assets Control or which is owned 50% or more, individually or in the aggregate, by one or more SDN-Listed parties; or

      (D)  a party on the EU Consolidated List of Persons, Groups and Entities Subject to EU Financial Sanctions (the "EU Consolidated List") or which is majority-owned or controlled by one or more parties on the EU

Consolidated List, or which is otherwise subject to asset-freezing measures under EU Member State laws; or

(iii)  predominantly engaged in carrying cargo to or from any U.S.-sanctioned Country or Crimea.

Both Parties represent that they will not make any improper payments of money or give anything of value to a government official in connection with the activities covered by these Standard Terms & Conditions, nor will they make improper payments to a third party knowing or suspecting that the third party will give the payment or thing of value, or a portion of it, to a government official.

12.     **CHOICE OF LAW AND LITIGATION:**

(a)     Any question concerning the construction, meaning, or effect of these Standard Terms & Conditions or any dispute concerning the rights, duties, or obligations of the Parties under these Standard Terms & Conditions, without prejudice to Seller's rights to enforce any maritime lien arising hereunder in any jurisdiction, will be governed by the laws of the State of New York to the exclusion of any conflicts of law rules which would apply those of another jurisdiction.

(b)     Any claim or controversy arising out of or relating to these Standard Terms & Conditions will be settled exclusively in the state or federal courts of Manhattan County, New York, New York, and the parties consent to personal jurisdiction there.

13.     **GENERAL:**

(a) Strict Performance, Waiver: The right of either Party to require strict performance will not be affected by any prior waiver or course of dealing. All rights and remedies are cumulative, and election of one remedy does not exclude another.

(b) Buyer Acting as Agent: If the order for Products was placed by Buyer acting as agent on behalf of a disclosed or undisclosed principal, Buyer will be liable for performance of all obligations to the Seller, including payment.

(c) Assignment: Seller may assign to an Affiliate or other supplier the obligations of Seller described in these Standard Terms & Conditions without the consent of the Buyer, in which event any such assignee will enjoy and be entitled to exercise against Buyer any and all rights of the Seller.

(d) Product Discontinuance: Seller may discontinue the sale at any port of any Product without liability or further obligation.

(e) Trademarks: Nothing contained in these Standard Terms & Conditions confers upon the Buyer the right to use Seller's trademarks, trade dress, or brand names.

(f) Severability: Should any provision of these Standard Terms & Conditions be determined by a court to be inconsistent with or contrary to applicable law or otherwise unenforceable, that provision shall be deemed amended or omitted to conform with the relevant law without affecting any other provision or the general validity of these Standard Terms & Conditions.

(g) Governing Terms: The terms set forth herein will prevail over any terms put forward by the Buyer unless the Seller expressly agrees to those terms in writing. No conduct by the Seller, its Affiliates, or its Agents will be deemed to constitute acceptance of any terms put forward by the Buyer. Headings are included as a reference only and shall not in any way affect the meaning or interpretation of these Standard Terms & Conditions.

(h) No Variation: Unless otherwise agreed in writing, these Standard Terms & Conditions contain all of the terms of the agreement between the Parties, and no statements made outside these Standards Terms & Conditions in brochures, catalogues, sales literature, correspondence, or orally during negotiations are intended to have contractual effect.

(i) Right to Enforce: The Affiliates and Agents as defined herein will have the right to enforce and rely upon the terms of this Contract. No other person or entity not a Party to these Standard Terms & Conditions will have rights to enforce any of its provisions.

(j) The United Nations Convention on Contracts for the International Sale of Goods shall not apply to these Standard Terms & Conditions or to any other agreement in which they are incorporated unless otherwise expressly provided.

Sincerely,

Sales Operations - Contracting

Fuels & Lubricants Customer Service

# EXHIBIT 3

**ExxonMobil**

**ORIGINAL INVOICE**

Sold to
Master and Owners of M/V JANE A BOUCHARD AND OWNERS
C/O BOUCHARD TRANSPORTATION CO. INC
58 SOUTH SERVICE ROAD SUITE 150
MELVILLE NY  11747
USA

| | |
|---|---|
| Page No | 1/1 |
| Invoice No | 36303034 |
| Invoice Date | 29 Mar 2019 |
| Customer No | 101172 |
| Order No | 1032299342 |
| Due date | 30 Apr 2019 |
| Inco-terms | DAP |
| Payment term | 30 days end of month (invoice) |

Bill to
Master and Owners of M/V JANE A BOUCHARD AND OWNERS
C/O BOUCHARD TRANSPORTATION CO. INC
58 SOUTH SERVICE ROAD SUITE 150
MELVILLE NY  11747
USA

| | |
|---|---|
| Contact Person | Stephen Landry |
| Phone | 1-855-412-0683 |
| Fax | |

Shipping Origin: 2939-I M T T - LUBES, Bayonne,07002, NJ,
Port: BAYONNE NJ 07002
CUSTOMER ORDER REFERENCE: NONE
CN Code:

**Invoice currency          USD**

| Del Date | Qty | Description | | Volume/weight | UoM | Price | Value | TX |
|---|---|---|---|---|---|---|---|---|
| Del Receipt No | | BoL No | | | | | | |
| 11 Mar 2019 | | M-GARD 410 NC BULK | Bulk | 700.000 | UG6 | 9.33 | 6,531.00 | D0 |
| 757629A | | 3008213807 | | | | | | |
| Material code: 121590 | | | | | | | | |

**TAX AND REGISTRATION NUMBER**

**HEADER TEXTS**
ExxonMobil's economic interest in your payment may have been sold to another affiliate, but seller retains title to your payment and collection rights.

ExxonMobil's Terms and Conditions of Sale shall apply to this order unless otherwise documented by both parties. Details are available on the web at www.exxonmobil.com/lube_sales_terms.

| Payment terms | Due date | Amount due |
|---|---|---|
| 30 days end of month (invoice) | 30 Apr 2019 | 6,531.00 |

| | | | |
|---|---|---|---|
| Total | Net | 6,531.00 | USD |
| Total | Taxes | 0.00 | USD |
| Total | Amount | 6,531.00 | USD |



*0US000010117236303030340001*

Bill to
Master and Owners of M/V JANE A BOUCHARD AND OWNERS
C/O BOUCHARD TRANSPORTATION CO. INC
58 SOUTH SERVICE ROAD SUITE 150
MELVILLE NY  11747
USA

Remit to:
EXXONMOBIL OIL CORPORATION
P.O. BOX 8500 K-120
PHILADELPHIA, PA  19178-0120
Customer #: 101172
Invoice #: 36303034
Date: 29 Mar 2019

# CN Code

| | |
|---|---|
| Blank | The selling party is not aware of any rebate relating to this invoice, which would be given under a seperate credit note. |
| 1 | This invoice is not subject to a further credit note. |
| 2 | This invoice may be subject to a rebate which, if applicable, will be given under a separate credit note. |
| 3 | This invoice is subject to a rebate which will be/was given under a separate credit note. |
| 4 | This invoice was or will be subject to a rebate to be given under further credit notes. |
| 5 | Prices are preliminary base unit prices according to the terms and conditions of the contract. |

**ExxonMobil**

**marine delivery receipt**

FCO 469A (1-87)

| DEL'D FROM | *IMTT- BAYONNE* | DATE | *3.11.19* | CUST. NO. | *118899* |
| VESSEL | *JANE A BROUCHARD* | | | SHIP TO | **No. 757629** |
| INVOICE TO | *BROUCHARD TRANSPORTATION COMPANY* | | | DEL'D TO | |

(AND OR OWNERS)

| OWNER'S NAME AND ADDRESS | | DELIVER PORT | *Bayonne NJ 07002* | DATE DEL'D TO VESSEL | *3.11.19* |

| CUST. ORDER NO. | M.O.D. | NEXT PORT OF CALL | | ULTIMATE DESTINATION |

| NO. | PACKAGES SIZE | PRODUCTS | OFFICE CODES PRODUCT | TAX | PKG CODE | QUANTITY | |
|-----|---------------|----------|---------|-----|----------|----------|--|
| 1 | *BULK* | *MOBILE GUARD 440 NC* | | | | *700* | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| NUMBER OF EMPTY DRUMS RETURNED: | | *700 gal.* |

---

STATE SALES AND USE TAX EXEMPTION CERTIFICATE

# All information must be provided—To exempt sales tax

STATE   *NEW JERSEY*

Name of Vessel   *JANE A BROUCHARD*

Home Port   *NEW YORK*

The undersigned certifies that the products identified on the above delivery receipt are exempt from the State Sales and Use Tax for the following reasons: (Check appropriate box)

☑ Exemption is claimed because such products are for use as fuel or supplies for a vessel:
  ☑ Engaged in Foreign or Interstate Commerce
  ☐ Engaged in Commercial Fishing Business
☐ Other _____

Registration/License Number _____

The vendee agrees that if the material purchased tax free under this exemption certificate is used or disposed of otherwise than as herein specified, the vendee shall pay the tax, including interest and penalties on such material to the taxing authority or will reimburse the vendor for any tax, including interest and penalties assessed by the taxing authority. The above goods received in good order and bought and sold on credit of the vessel for continuation of the voyage.

| *3/11/19* | X *David Wander* | X *Engineer* |
| DATE | SIGNATURE OF OFFICER OR AUTHORIZED REPRESENTATIVE | TITLE |

**ORIGINAL BILLING LOCATION**

# EXHIBIT 4

**ExxonMobil**

**ORIGINAL INVOICE**

Sold to
Master and Owners of Jane A Bouchard
C/O BOUCHARD TRANSPORTATION COMPANY
58 SOUTH SERVICE ROAD, SUITE 150
MELVILLE NY  11747
USA

| | |
|---|---|
| Page No | 1/1 |
| Invoice No | 36431033 |
| Invoice Date | 09 Apr 2019 |
| Customer No | 101437 |
| Order No | 1032418902 |
| Due date | 31 May 2019 |
| Inco-terms | FOB |
| Payment term | 30 days end of month (invoice) |

Bill to
Master and Owners of Jane A Bouchard
C/O BOUCHARD TRANSPORTATION COMPANY
58 SOUTH SERVICE ROAD, SUITE 150
MELVILLE NY  11747
USA

| | |
|---|---|
| Contact Person | Heidi Tingley |
| Phone | 506-389-6047 |
| Fax | |

Shipping Origin: I M T T - FUELS:OBO:01G4, Bayonne,07002, NJ,
Port: BAYONNE (NJ)
Shipping conditions: Vessel Pickup
CN Code: 1

| | | |
|---|---|---|
| | Invoice currency | USD |

| Del Date | Qty | Description | Volume/weight | UoM | Price | Value | TX |
|---|---|---|---|---|---|---|---|
| Del Receipt No | | BoL No | | | | | |
| 04 Apr 2019 | < MAR> | S15 NRLM NO.2 DSL ADD DYED (NBulk | 25,003.000 | UGL | 2.106800 | 52,676.32 | D0 |
| MDR757731 | | 3008245628 | Text Code(s): 0114 | | | | |

**PRODUCT 113248 IS DYED DIESEL FUEL, NONTAXABLE USE ONLY, PENALTY FOR TAXABLE USE.**
Material code: 113248

**TAX SUMMARY**

| | | | | | | |
|---|---|---|---|---|---|---|
| FED LUST FUND - DYED | 25,003.00 | UGL | USD6 | 0.001000 1 UGL | USD | 25.00 |

**TAX AND REGISTRATION NUMBER**

**HEADER TEXTS**
ExxonMobil's economic interest in your payment may have been sold to another affiliate, but seller retains title to your payment and collection rights.

We hereby certify that these goods were produced in compliance with the Fair Labor Standards Act of 1938 as amended.

This invoice is not subject to a further credit note.

**ITEM TEXT CODE EXPLANATION**
0114 - 15 ppm sulfur (maximum) Dyed Ultra-Low Sulfur Diesel Fuel.  For use in all nonroad diesel engines. Not for use in highway vehicles or engines except for tax-exempt use in accordance with section 4082 of the internal revenue Code. Dyed diesel fuel. Nontaxable use only. Penalty for taxable use. This fuel meets the standards for Sulfur and Cetane Index or Aromatics content of 40 CFR 80.29 and is only for tax-exempt use in diesel motor vehicles as defined under section 4082 of the Internal Revenue Code.

| Payment terms | Due date | Amount due |
|---|---|---|
| 30 days end of month (invoice) | 31 May 2019 | 52,701.32 |

| | | | |
|---|---|---|---|
| Total | Net | 52,676.32 | USD |
| Total | Taxes | 25.00 | USD |
| Total | Amount | 52,701.32 | USD |



*0US00001014373643103330001*

Bill to
Master and Owners of Jane A Bouchard
C/O BOUCHARD TRANSPORTATION COMPANY
58 SOUTH SERVICE ROAD, SUITE 150
MELVILLE NY  11747
USA

Remit to:
EXXONMOBIL OIL CORPORATION
P.O. BOX 8500 K-120
PHILADELPHIA,  PA  19178-0120
Customer #: 101437
Invoice #: 36431033
Date: 09 Apr 2019

# CN  Code

Blank    The selling party is not aware of any rebate relating to this invoice, which would be given under a seperate credit note.
1        This invoice is not subject to a further credit note.
2        This invoice may be subject to a rebate which, if applicable, will be given under a separate credit note.
3        This invoice is subject to a rebate which will be/was given under a separate credit note.
4        This invoice was or will be subject to a rebate to be given under further credit notes.
5        Prices are preliminary base unit prices according to the terms and conditions of the contract.

**EXXONMOBIL**  marine delivery receipt

FCO 469A (1-87)

DEL'D FROM IMTT BAYONNE   DATE 4-4-19   CUST NO. 118899

VESSEL JANE B. BOUCHARD   SHIP TO

INVOICE TO Bouchard TRANSPORTATION CO.   DEL'D TO

No. 757731

(AND OR OWNERS)

OWNER'S NAME AND ADDRESS

DELIVER PORT Bayonne NJ 07002   DATE DEL'D TO VESSEL 4.4.19

| CUST. ORDER NO. | M.O.D. | NEXT PORT OF CALL | | ULTIMATE DESTINATION |
|---|---|---|---|---|
| | | | | |

| NO. | PACKAGES SIZE | PRODUCTS | OFFICE CODES PRODUCT | TAX | PKG. CODE | QUANTITY |
|---|---|---|---|---|---|---|
| 1 | BULK | MDO | | | | 25,000 25,003 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

NUMBER OF EMPTY DRUMS RETURNED:

25,003 gal.

---

**STATE SALES AND USE TAX EXEMPTION CERTIFICATE**

## All information must be provided—To exempt sales tax

STATE NEW JERSEY

Name of Vessel JANE E. BOUCHARD

Home Port NEW YORK

The undersigned certifies that the products identified on the above delivery receipt are exempt from the State Sales/and Use Tax for the following reasons: (Check appropriate box)

☒ Exemption is claimed because such products are for use as fuel or supplies for a vessel:
    ☒ Engaged in Foreign or Interstate Commerce
    ☐ Engaged in Commercial Fishing Business
☐ Other _____

Registration/License Number _____

The vendee agrees that if the material purchased tax free under this exemption certificate is used or disposed of otherwise than as herein specified, the vendee shall pay the tax, including interest and penalties on such material to the taxing authority or will reimburse the vendor for any tax, including interest and penalties assessed by the taxing authority. The above goods received in good order and bought and sold on credit of the vessel for continuation of the voyage.

X 4-4-19   x _____   x engineer
DATE   SIGNATURE OF OFFICER OR AUTHORIZED REPRESENTATIVE   TITLE

**ORIGINAL BILLING LOCATION**

**ExxonMobil**   ORIGINAL   FCC-100 D (

**truck meter invoice**

DATE 4.4.19   TERMS   MOD

DEL'D FROM *ExxTi Bayonne* DRIVER   TRUCK NO

DEL'D AT   CUSTOMER ORDER NO.

CUST NO. *118899*

SOLD TO *Bouchard Trans. Co.*
*Jane A. Bouchard*
*MAO*

CASH DISCOUNT   INVOICE NO. **125775**

| MOBIL PRODUCTS | OFFICE CODES | | | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| | PRODUCT | TAX | PKG | | | |
| PREMIUM | 01001-7 | | 1 | | | |
| SUPER UNLEADED | 01502-4 | | 1 | | | |
| REGULAR | 02001-6 | | 1 | | | |
| UNLEADED | 03501-4 | | 1 | | | |
| DIESEL FUEL | 16001-0 | | 1 | | | |
| HEATING OIL #2 | 18001-8 | | 1 | | | |

| SETTLEMENT | | | | | |
|---|---|---|---|---|---|
| CASH | | SUB TOTAL | | | |
| CREDIT CARD SALES | | ITEM | CODE | RATE | |
| CHECKS | | COLLECTION | 980029 | | |
| | | SALES TAX | 99 | % | |
| TOTAL | | INVOICE TOTAL | | | |

| STATE MOTOR FUEL TAX WHERE REQUIRED | GALS | RATE | AMT |
|---|---|---|---|

**(For State of Missouri)** The undersigned certifies that the purchaser expressly declared his intention to file a claim for refund of the motor fuel tax included herein.

The seller of motor fuel certifies that the motor fuel tax will be paid as required by law.

If taxes not shown separately unit price shown above includes any applicable accrued federal and/or excise taxes unless otherwise indicated on this notice.

The products covered on this invoice meet the ASTM standards set forth in Arkansas Statutes 53-601 as amended

Signed _____
Agent for Seller)

AA 2 4 4    4 9 5 2 2 1 7

AA 2 4 3    4 9 7 7 2 1 4

GALS. DEL'D *25003*

RECEIVED PAYMENT FOR MOBIL OIL CORPORATION   RECEIVED ABOVE PRODUCTS AND QUANTITIES

x *Michael Saule*

# EXHIBIT 5

**ExxonMobil**

**ORIGINAL INVOICE**

Sold to
Master and Owners of Jane A Bouchard
C/O BOUCHARD TRANSPORTATION COMPANY
58 SOUTH SERVICE ROAD, SUITE 150
MELVILLE NY 11747
USA

| | |
|---|---|
| Page No | 1/1 |
| Invoice No | 36592537 |
| Invoice Date | 24 Apr 2019 |
| Customer No | 101437 |
| Order No | 1032569401 |
| Due date | 31 May 2019 |
| Inco-terms | FOB |
| Payment term | 30 days end of month (invoice) |

Bill to
Master and Owners of Jane A Bouchard
C/O BOUCHARD TRANSPORTATION COMPANY
58 SOUTH SERVICE ROAD, SUITE 150
MELVILLE NY 11747
USA

| | |
|---|---|
| Contact Person | Heidi Tingley |
| Phone | 506-389-6047 |
| Fax | |

Shipping Origin: I M T T - FUELS:OBO:01G4, Bayonne,07002, NJ,
Port: BAYONNE (NJ)
Shipping conditions: Vessel Pickup
CN Code: 1

| | | | |
|---|---|---|---|
| | | Invoice currency | USD |

| Del Date | Qty | Description | | Volume/weight | UoM | Price | Value TX |
|---|---|---|---|---|---|---|---|
| Del Receipt No | | BoL No | | | | | |
| 18 Apr 2019 | < MAR> | S15 NRLM NO.2 DSL ADD DYED (NBulk | | 30,000.000 | UGL | 2.200200 | 66,006.00 D0 |
| MDR757789 | | 3008288366 | Text Code(s): 0114 | | | | |

**PRODUCT 113248 IS DYED DIESEL FUEL, NONTAXABLE USE ONLY, PENALTY FOR TAXABLE USE.**
Material code: 113248

**TAX SUMMARY**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| FED LUST FUND - DYED | 30,000.00 | UGL | USD6 | 0.001000 | 1 UGL | USD | 30.00 |

**TAX AND REGISTRATION NUMBER**

**HEADER TEXTS**
ExxonMobil's economic interest in your payment may have been sold to another affiliate, but seller retains title to your payment and collection rights.

We hereby certify that these goods were produced in compliance with the Fair Labor Standards Act of 1938 as amended.

This invoice is not subject to a further credit note.

**ITEM TEXT CODE EXPLANATION**
0114 - 15 ppm sulfur (maximum) Dyed Ultra-Low Sulfur Diesel Fuel.  For use in all nonroad diesel engines. Not for use in highway vehicles or engines except for tax-exempt use in accordance with section 4082 of the Internal revenue Code. Dyed diesel fuel. Nontaxable use only. Penalty for taxable use. This fuel meets the standards for Sulfur and Cetane Index or Aromatics content of 40 CFR 80.29 and is only for tax-exempt use in diesel motor vehicles as defined under section 4082 of the Internal Revenue Code.

| Payment terms | Due date | Amount due |
|---|---|---|
| 30 days end of month (invoice) | 31 May 2019 | 66,036.00 |

| | | | |
|---|---|---|---|
| Total | Net | 66,006.00 | USD |
| Total | Taxes | 30.00 | USD |
| Total | Amount | 66,036.00 | USD |



*0US00001014373659253700001*

Bill to
Master and Owners of Jane A Bouchard
C/O BOUCHARD TRANSPORTATION COMPANY
58 SOUTH SERVICE ROAD, SUITE 150
MELVILLE NY  11747
USA

Remit to:
EXXONMOBIL OIL CORPORATION
P.O. BOX 8500 K-120
PHILADELPHIA, PA  19178-0120
Customer #: 101437
Invoice #: 36592537
Date: 24 Apr 2019

# CN Code

| Blank | The selling party is not aware of any rebate relating to this invoice, which would be given under a seperate credit note. |
| 1 | This invoice is not subject to a further credit note. |
| 2 | This invoice may be subject to a rebate which, if applicable, will be given under a separate credit note. |
| 3 | This invoice is subject to a rebate which will be/was given under a separate credit note. |
| 4 | This invoice was or will be subject to a rebate to be given under further credit notes. |
| 5 | Prices are preliminary base unit prices according to the terms and conditions of the contract. |

# ExxonMobil

## marine delivery receipt

FCO 469A (1-87)

DEL'D FROM IMTT   DATE 4/18/19

CUST. NO. 118899

No. **757789**

VESSEL JANE BOUCHARD

SHIP TO

INVOICE TO BOUCHARD TRANS.

DEL'D TO

(AND OR OWNERS)

OWNER'S NAME AND ADDRESS

DELIVER PORT Bayonne NJ 07002   DATE DEL'D TO VESSEL 4.18.19

| CUST. ORDER NO. | M.O.D. | NEXT PORT OF CALL | | ULTIMATE DESTINATION |
|---|---|---|---|---|
| | | | | |

| NO. | PACKAGES SIZE | PRODUCTS | OFFICE CODES PRODUCT | TAX | PKG. CODE | QUANTITY | |
|---|---|---|---|---|---|---|---|
| 1 | Bulk | MDO | | | | 30,000 | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

NUMBER OF EMPTY DRUMS RETURNED:

30,000 gals

## STATE SALES AND USE TAX EXEMPTION CERTIFICATE

# All information must be provided—To exempt sales tax

STATE NJ

Name of Vessel JANE BOUCHARD

Home Port NY

The undersigned certifies that the products identified on the above delivery receipt are exempt from the State Sales/Use Tax for the following reasons: (Check appropriate box)

✓ Exemption is claimed because such products are for use as fuel or supplies for a vessel:
  ✓ Engaged in Foreign or Interstate Commerce
  ☐ Engaged in Commercial Fishing Business
☐ Other _____

Registration/License Number _____

The vendee agrees that if the material purchased tax free under this exemption certificate is used or disposed of otherwise than as herein specified, the vendee shall pay the tax, including interest and penalties on such material to the taxing authority or will reimburse the vendor for any tax, including interest and penalties assessed by the taxing authority. The above goods received in good order and bought and sold on credit of the vessel for continuation of the voyage.

4-18-19
DATE

Anthony Paul
SIGNATURE OF OFFICER OR AUTHORIZED REPRESENTATIVE

Chief Engineer
TITLE

ORIGINAL BILLING LOCATION

**ExxonMobil**   ORIGINAL   FCO-135 D (8-84)

**truck meter invoice**

DATE 4/18/19   TERMS   MOD.

DEL'D FROM IMTT   DRIVER   TRUCK NO

DEL'D AT

CUST NO.   CUSTOMER ORDER NO.   118899

SOLD TO   BOUCHARD TRANSPORTATION
JANE BOUCHARD
MDO

CASH DISCOUNT   INVOICE NO. **126293**

| MOBIL PRODUCTS | OFFICE CODES | | | QUANTITY | PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| | PRODUCT | TAX | PKG | | | |
| PREMIUM | 01001-7 | | 1 | | | |
| SUPER UNLEADED | 01502-4 | | 1 | | | |
| REGULAR | 02001-6 | | 1 | | | |
| UNLEADED | 03501-4 | | 1 | | | |
| DIESEL FUEL | 16001-0 | | 1 | | | |
| HEATING OIL #2 | 18001-8 | | 1 | | | |

| SETTLEMENT | | | | | | |
|---|---|---|---|---|---|---|
| CASH | | SUB TOTAL | | | | |
| CREDIT CARD SALES | | ITEM | CODE | RATE | | |
| CHECKS | | COLLECTION | 980029 | | | |
| | | SALES TAX | 99 | % | | |
| TOTAL | | INVOICE TOTAL | | | | |

| STATE MOTOR FUEL TAX WHERE REQUIRED | GALS | RATE | | AMT |
|---|---|---|---|---|

(The State of Missouri) The undersigned certifies that the purchaser expressly declared his intention to file a claim for refund of the motor fuel tax included herein

The seller of motor fuel certifies that the motor fuel tax will be paid as required by law

If taxes not shown separately, unit price shown above includes any applicable accrued federal and/or excise taxes unless otherwise indicated on this notice

The products covered on this invoice meet the ASTM standards set forth in Arkansas Statutes 53-601 as amended

Signed _____
Agent for Seller;

| AA 2 7 2 | 5 9 6 8 0 | 10ths 0 |
| AA 2 7 1 | 5 2 6 6 8 0 | 0 |

GALS DEL'D

RECEIVED PAYMENT FOR MOBIL OIL CORPORATION

RECEIVED ABOVE PRODUCTS AND QUANTITIES

# EXHIBIT 6

**Ex🇽onMobil**

**ORIGINAL INVOICE**

Sold to
Master and Owners of M/V JANE A BOUCHARD AND OWNERS
C/O BOUCHARD TRANSPORTATION CO. INC
58 SOUTH SERVICE ROAD SUITE 150
MELVILLE NY  11747
USA

| | |
|---|---|
| Page No | 1/1 |
| Invoice No | 36595478 |
| Invoice Date | 25 Apr 2019 |
| | |
| Customer No | 101172 |
| Order No | 2601722291 |
| Due date | 31 May 2019 |
| Inco-terms | DAP |
| Payment term | 30 days end of month (invoice) |

Bill to
Master and Owners of M/V JANE A BOUCHARD AND OWNERS
C/O BOUCHARD TRANSPORTATION CO. INC
58 SOUTH SERVICE ROAD SUITE 150
MELVILLE NY  11747
USA

| | |
|---|---|
| Contact Person | Stephen Landry |
| Phone | 1-855-412-0683 |
| Fax | |

Shipping Origin: COMMERCIAL LUBRICANTS MOOVE CORP., Staten Island,10303, NY,
Port: STATEN ISLAND NY 10310
CUSTOMER ORDER REFERENCE: PO#9057439
CN Code:

**Invoice currency     USD**

| Del Date | Qty | Description | | Volume/weight | UoM | Price | Value | TX |
|---|---|---|---|---|---|---|---|---|
| Del Receipt No | | BoL No | | | | | | |
| 23 Apr 2019 | 4 | M-DTE 10 EXCEL 150 DRUM 55USG | Pack | 220.000 | UG6 | 13.10 | 2,882.00 | D0 |
| 773239 | | 3106298 | | | | | | |
| Material code: 104038 | | | | | | | | |

**TAX AND REGISTRATION NUMBER**

**HEADER TEXTS**
ExxonMobil's economic interest in your payment may have been sold to another affiliate, but seller retains title to your payment and
collection rights.

ExxonMobil's Terms and Conditions of Sale shall apply to this order unless otherwise documented by both parties. Details are available
on the web at www.exxonmobil.com/lube_sales_terms.

| Payment terms | Due date | Amount due |
|---|---|---|
| 30 days end of month (invoice) | 31 May 2019 | 2,882.00 |

| | | |
|---|---|---|
| Total  Net | 2,882.00 | USD |
| Total  Taxes | 0.00 | USD |
| Total  Amount | 2,882.00 | USD |



*0US000010117236595478000 1*

Bill to
Master and Owners of M/V JANE A BOUCHARD AND OWNERS
C/O BOUCHARD TRANSPORTATION CO. INC
58 SOUTH SERVICE ROAD SUITE 150
MELVILLE NY  11747
USA

Remit to:
EXXONMOBIL OIL CORPORATION
P.O. BOX 8500 K-120
PHILADELPHIA,  PA  19178-0120
Customer #: 101172
Invoice #: 36595478
Date: 25 Apr 2019

# CN Code

| | |
|---|---|
| Blank | The selling party is not aware of any rebate relating to this invoice, which would be given under a seperate credit note. |
| 1 | This invoice is not subject to a further credit note. |
| 2 | This invoice may be subject to a rebate which, if applicable, will be given under a separate credit note. |
| 3 | This invoice is subject to a rebate which will be/was given under a separate credit note. |
| 4 | This invoice was or will be subject to a rebate to be given under further credit notes. |
| 5 | Prices are preliminary base unit prices according to the terms and conditions of the contract. |

**marine delivery receipt**

VESSEL: *Metrolybe* DATE 4/23/19

*Jane Bouchard*

INVOICE TO *Bouchard*

OWNER'S NAME AND ADDRESS *1483 Richmond te* *SD NY 10310*

CUST. NO.

SHIP TO

DEL'D TO

DELIVER PORT *SD NY 10310*

(AND OR OWNERS)

No. 3106298

No. 773239

DATE DEL'D TO VESSEL 4/23/19

CUST. ORDER NO. *9057439*     M.O.D.     NEXT PORT OF CALL     ULTIMATE DESTINATION

| NO. | PACKAGES SIZE | PRODUCTS | OFFICE CODES PRODUCT | TAX | PKG. CODE | QUANTITY | |
|-----|---------------|----------|----------|-----|-----------|----------|---|
| 4 | 55 gal | Mobil DTE 10 150 | 104038 | | DN | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

NUMBER OF EMPTY DRUMS RETURNED:

---

STATE SALES AND USE TAX EXEMPTION CERTIFICATE

# All information must be provided—To exempt sales tax

STATE _NY_

Name of Vessel _Jane Bouchard_

Home Port _____

The undersigned certifies that the products identified on the above delivery receipt are exempt from the State Sales/and Use Tax for the following reasons: (Check appropriate box)

☐ Exemption is claimed because such products are for use as fuel or supplies for a vessel:
  ☐ Engaged in Foreign or Interstate Commerce
  ☐ Engaged in Commercial Fishing Business
☐ Other _____

Registration/License Number _____

The vendee agrees that if the material purchased tax free under this exemption certificate is used or disposed of otherwise than as herein specified, the vendee shall pay the tax, including interest and penalties on such material to the taxing authority or will reimburse the vendor for any tax, including interest and penalties assessed by the taxing authority. The above goods received in good order and bought and sold on credit of the vessel for continuation of the voyage.

4/23/19 DATE     4/24/19 SIGNATURE OF OFFICER OR AUTHORIZED REPRESENTATIVE     (-MM) TITLE

ORIGINAL BILLING LOCATION

# EXHIBIT 7

**ExxonMobil**

## ORIGINAL INVOICE

Sold to
Master and Owners of M/V JANE A BOUCHARD AND OWNERS
C/O BOUCHARD TRANSPORTATION CO. INC
58 SOUTH SERVICE ROAD SUITE 150
MELVILLE NY  11747
USA

| | |
|---|---|
| Page No | 1/1 |
| Invoice No | 36694468 |
| Invoice Date | 03 May 2019 |
| Customer No | 101172 |
| Order No | 2601741618 |
| Due date | 01 Jul 2019 |
| Inco-terms | DAP |
| Payment term | 30 days end of month (invoice) |
| Contact Person | Stephen Landry |
| Phone | 1-855-412-0683 |
| Fax | |

Bill to
Master and Owners of M/V JANE A BOUCHARD AND OWNERS
C/O BOUCHARD TRANSPORTATION CO. INC
58 SOUTH SERVICE ROAD SUITE 150
MELVILLE NY  11747
USA

Shipping Origin: COMMERCIAL LUBRICANTS MOOVE CORP., Staten Island,10303, NY,
Port: STATEN ISLAND NY 10310
CUSTOMER ORDER REFERENCE: PO#9057541
CN Code:

Invoice currency    USD

| Del Date | Qty | Description | Volume/weight | UoM | Price | Value TX |
|---|---|---|---|---|---|---|
| Del Receipt No | | BoL No | | | | |
| 01 May 2019 | 5 | M-RARUS 427 PAIL 5USG | Pack | 25.000 | UG6 | 15.63 | 390.75 D0 |
| 773246 | | 3106849 | | | | |
| Material code: 104848 | | | | | | |

## TAX AND REGISTRATION NUMBER

## HEADER TEXTS

ExxonMobil's economic interest in your payment may have been sold to another affiliate, but seller retains title to your payment and collection rights.

ExxonMobil's Terms and Conditions of Sale shall apply to this order unless otherwise documented by both parties. Details are available on the web at www.exxonmobil.com/lube_sales_terms.

| Payment terms | Due date | Amount due |
|---|---|---|
| 30 days end of month (invoice) | 01 Jul 2019 | 390.75 |

| | | | |
|---|---|---|---|
| Total | Net | 390.75 | USD |
| Total | Taxes | 0.00 | USD |
| Total | Amount | 390.75 | USD |



*0US000010117236694468000*

Bill to
Master and Owners of M/V JANE A BOUCHARD AND OWNERS
C/O BOUCHARD TRANSPORTATION CO. INC
58 SOUTH SERVICE ROAD SUITE 150
MELVILLE NY  11747
USA

Remit to:
EXXONMOBIL OIL CORPORATION
P.O. BOX 8500 K-120
PHILADELPHIA, PA  19178-0120
Customer #:  101172
Invoice #: 36694468
Date: 03 May 2019

# CN Code

| | |
|---|---|
| Blank | The selling party is not aware of any rebate relating to this invoice, which would be given under a seperate credit note. |
| 1 | This invoice is not subject to a further credit note. |
| 2 | This invoice may be subject to a rebate which, if applicable, will be given under a separate credit note. |
| 3 | This invoice is subject to a rebate which will be/was given under a separate credit note. |
| 4 | This invoice was or will be subject to a rebate to be given under further credit notes. |
| 5 | Prices are preliminary base unit prices according to the terms and conditions of the contract. |

# Mobil

**marine delivery receipt**

DEL'D FROM VESSEL: _Metro lube_  DATE: _5/1/19_  Jane Bouchard

INVOICE TO: _Bouchard_

OWNER'S NAME AND ADDRESS: _1483 Richmond Ter. SI NY 10310_

CUST. ORDER NO. _905-754/_  M.O.D. _____  NEXT PORT OF CALL: _____

CUST. NO. _3106849_

SHIP TO: _____

DEL'D TO: _____

No. _773246_

(AND OR OWNERS)

DELIVER PORT: _SI NY 10310_   DATE DEL'D TO VESSEL: _5/1/19_

ULTIMATE DESTINATION: _100896_

FCO /489A (1-87)

| NO. | PACKAGES SIZE | PRODUCTS | OFFICE CODES PRODUCT | TAX | PKG. CODE | QUANTITY | |
|-----|---------------|----------|----------------------|-----|-----------|----------|---|
| 5 | 5 Gal | Mobil Gear 427 | 104848 | | Ka | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

NUMBER OF EMPTY DRUMS RETURNED:

---

STATE SALES AND USE TAX EXEMPTION CERTIFICATE

# All information must be provided—To exempt sales tax

STATE _NY_

Name of Vessel _Jane Bouchard_

Home Port _____

The undersigned certifies that the products identified on the above delivery receipt are exempt from the State Sales/and Use Tax for the following reasons: (Check appropriate box)

☑ Exemption is claimed because such products are for use as fuel or supplies for a vessel:
  ☐ Engaged in Foreign or Interstate Commerce
  ☐ Engaged in Commercial Fishing Business
☐ Other _____

Registration/License Number _____

The vendee agrees that if the material purchased tax free under this exemption certificate is used or disposed of otherwise than as herein specified, the vendee shall pay the tax, including interest and penalties on such material to the taxing authority or will reimburse the vendor for any tax, including interest and penalties assessed by the taxing authority. The above goods received in good order and bought and sold on credit of the vessel for continuation of the voyage.

_5/1/19_
DATE

SIGNATURE OF OFFICER OR AUTHORIZED REPRESENTATIVE _5/1/19_

TITLE

ORIGINAL BILLING LOCATION

# EXHIBIT 8

**ExxonMobil**

**ORIGINAL INVOICE**

Sold to
Master and Owners of M/V JANE A BOUCHARD AND OWNERS
C/O BOUCHARD TRANSPORTATION CO. INC
58 SOUTH SERVICE ROAD SUITE 150
MELVILLE NY  11747
USA

| | |
|---|---|
| Page No | 1/1 |
| Invoice No | 37507140 |
| Invoice Date | 16 Jul 2019 |
| Customer No | 101172 |
| Order No | 1033460666 |
| Due date | 03 Sep 2019 |
| Inco-terms | DAP |
| Payment term | 30 days end of month (invoice) |

Bill to
Master and Owners of M/V JANE A BOUCHARD AND OWNERS
C/O BOUCHARD TRANSPORTATION CO. INC
58 SOUTH SERVICE ROAD SUITE 150
MELVILLE NY  11747
USA

| | |
|---|---|
| Contact Person | Stephen Landry |
| Phone | 1-855-412-0683 |
| Fax | |

Shipping Origin: 2939-I M T T - LUBES, Bayonne,07002, NJ,
Port: BAYONNE NJ 07002
CN Code:

Invoice currency          **USD**

| Del Date | Qty | Description | | Volume/weight | UoM | Price | Value | TX |
|---|---|---|---|---|---|---|---|---|
| Del Receipt No | | BoL No | | | | | | |
| 14 Jul 2019 | | M-GARD 410 NC BULK | Bulk | 800.000 | UG6 | 10.19 | 8,152.00 | D0 |
| 758162 | | 3008536425 | | | | | | |
| Material code: 121590 | | | | | | | | |

**TAX AND REGISTRATION NUMBER**

**HEADER TEXTS**
ExxonMobil's economic interest in your payment may have been sold to another affiliate, but seller retains title to your payment and collection rights.

ExxonMobil's Terms and Conditions of Sale shall apply to this order unless otherwise documented by both parties. Details are available on the web at www.exxonmobil.com/lube_sales_terms.

| Payment terms | Due date | Amount due |
|---|---|---|
| 30 days end of month (invoice) | 03 Sep 2019 | 8,152.00 |

| | | |
|---|---|---|
| Total  Net | 8,152.00 | USD |
| Total  Taxes | 0.00 | USD |
| Total  Amount | 8,152.00 | USD |



*0US0000101172375071400001*

Bill to
Master and Owners of M/V JANE A BOUCHARD AND OWNERS
C/O BOUCHARD TRANSPORTATION CO. INC
58 SOUTH SERVICE ROAD SUITE 150
MELVILLE NY  11747
USA

Remit to:
EXXONMOBIL OIL CORPORATION
P.O. BOX 8500 K-120
PHILADELPHIA, PA  19178-0120
Customer #: 101172
Invoice #: 37507140
Date: 16 Jul 2019

# CN Code

| | |
|---|---|
| Blank | The selling party is not aware of any rebate relating to this invoice, which would be given under a seperate credit note. |
| 1 | This invoice is not subject to a further credit note. |
| 2 | This invoice may be subject to a rebate which, if applicable, will be given under a separate credit note. |
| 3 | This invoice is subject to a rebate which will be/was given under a separate credit note. |
| 4 | This invoice was or will be subject to a rebate to be given under further credit notes. |
| 5 | Prices are preliminary base unit prices according to the terms and conditions of the contract. |

**ExxonMobil**

**marine delivery receipt**

FCO 469A (1-87)

DEL'D FROM: _IMTT_  DATE: _7-14-19_
VESSEL: _JANE A. BOUCHARD_
INVOICE TO: _BOUCHARD TRANSPORT CO._
OWNER'S NAME AND ADDRESS:

CUST. NO.: _118899_
SHIP TO:
DEL'D TO:
(AND OR OWNERS)

No. **758162**

DELIVER PORT: _Bayonne NJ 07002_   DATE DEL'D TO VESSEL: _7.14.19_

| CUST. ORDER NO. | M.O.D. | NEXT PORT OF CALL | ULTIMATE DESTINATION |
|---|---|---|---|
| | | | |

| NO. | PACKAGES SIZE | PRODUCTS | OFFICE CODES PRODUCT | TAX | PKG. CODE | QUANTITY |
|---|---|---|---|---|---|---|
| 1 | BULK | MOBLGUARD 410NC | | | | 800 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

NUMBER OF EMPTY DRUMS RETURNED:

800 gal.

STATE SALES AND USE TAX EXEMPTION CERTIFICATE

## All information must be provided—To exempt sales tax

STATE: _NJ_
Name of Vessel: _JANE A. BOUCHARD_
Home Port: _NY NY_

The undersigned certifies that the products identified on the above delivery receipt are exempt from the State Sales/and Use Tax for the following reasons: (Check appropriate box)

☑ Exemption is claimed because such products are for use as fuel or supplies for a vessel:
  ☑ Engaged in Foreign or Interstate Commerce
  ☐ Engaged in Commercial Fishing Business
☐ Other _____

Registration/License Number _____

The vendee agrees that if the material purchased tax free under this exemption certificate is used or disposed of otherwise than as herein specified, the vendee shall pay the tax, including interest and penalties on such material to the taxing authority or will reimburse the vendor for any tax, including interest and penalties assessed by the taxing authority. The above goods received in good order and bought and sold on credit of the vessel for continuation of the voyage.

_7-14-19_   DATE   X _[signature]_   SIGNATURE OF OFFICER OR AUTHORIZED REPRESENTATIVE   X _Engineer_   TITLE

ORIGINAL BILLING LOCATION

**ExxonMobil**

**marine delivery receipt**

PCO 466A (1-97)

| | | |
|---|---|---|
| DEL'D FROM | IMTT | DATE 7-14-19 |
| VESSEL | JANE A. BOUCHARD | |
| INVOICE TO | BOUCHARD TRANSPORT CO. | |
| OWNER'S NAME AND ADDRESS | | |

CUST. NO. 118899

SHIP TO

DEL'D TO

No. **758162**

(AND OR OWNERS)

DELIVER PORT Bayonne NJ 07002    DATE DEL'D TO VESSEL 7.14.19

| CUST. ORDER NO. | M.O.D. | NEXT PORT OF CALL | ULTIMATE DESTINATION |
|---|---|---|---|
| | | | |

| NO. | PACKAGES SIZE | PRODUCTS | OFFICE CODES PRODUCT | TAX | PKG CODE | QUANTITY | |
|---|---|---|---|---|---|---|---|
| 1 | BULK | MOBILGUARD 410NC | | | | 800 | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

NUMBER OF EMPTY DRUMS RETURNED:

800 gal.

STATE SALES AND USE TAX EXEMPTION CERTIFICATE

# All information must be provided—To exempt sales tax

STATE _NJ_

Name of Vessel _JANE A. BOUCHARD_

Home Port _NY NY_

The undersigned certifies that the products identified on the above delivery receipt are exempt from the State Sales/and Use Tax for the following reasons: (Check appropriate box)

☑ Exemption is claimed because such products are for use as fuel or supplies for a vessel:
  ☑ Engaged in Foreign or Interstate Commerce
  ☐ Engaged in Commercial Fishing Business
☐ Other _____

Registration/License Number _____

The vendee agrees that if the material purchased tax free under this exemption certificate is used or disposed of otherwise than as herein specified, the vendee shall pay the tax, including interest and penalties on such material to the taxing authority or will reimburse the vendor for any tax, including interest and penalties assessed by the taxing authority. The above goods received in good order and bought and sold on credit of the vessel for continuation of the voyage

7-14-19    X _____    X    Engineer
DATE        SIGNATURE OF OFFICER OR AUTHORIZED REPRESENTATIVE        TITLE

ORIGINAL BILLING LOCATION

# EXHIBIT 9

**ExxonMobil**

**ORIGINAL INVOICE**

Sold to
Master and Owners of JANE A BOUCHARD
C/O BOUCHARD TRANSPORTATION COMPANY
58 SOUTH SERVICE ROAD, SUITE 150
MELVILLE NY 11747
USA

| | |
|---|---|
| Page No | 1/1 |
| Invoice No | 37576201 |
| Invoice Date | 22 Jul 2019 |
| Customer No | 101437 |
| Order No | 1033517392 |
| Due date | 03 Sep 2019 |
| Inco-terms | FOB |
| Payment term | 30 days end of month (invoice) |

Bill to
Master and Owners of JANE A BOUCHARD
C/O BOUCHARD TRANSPORTATION COMPANY
58 SOUTH SERVICE ROAD, SUITE 150
MELVILLE NY 11747
USA

| | |
|---|---|
| Contact Person | Heidi Tingley |
| Phone | 506-389-6047 |
| Fax | |

Shipping Origin: I M T T - FUELS:OBO:01G4, Bayonne,07002, NJ,
Port: BAYONNE (NJ)
Shipping conditions: Vessel Pickup
CN Code: 1

**Invoice currency     USD**

| Del Date | Qty | Description | | Volume/weight | UoM | Price | Value | TX |
|---|---|---|---|---|---|---|---|---|
| Del Receipt No | | | BoL No | | | | | |
| 14 Jul 2019 | | < MAR> S15 NRLM NO.2 DSL ADD DYED (NBulk | | 56,000.000 | UGL | 2.106100 | 117,941.60 | D0 |
| MDR758161 | | 3008552022 | | Text Code(s): 0114 | | | | |

**PRODUCT 113248 IS DYED DIESEL FUEL, NONTAXABLE USE ONLY, PENALTY FOR TAXABLE USE.**
Material code: 113248

**TAX SUMMARY**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| FED LUST FUND - DYED | 56,000.00 | UGL | USD6 | 0.001000 | 1 UGL | USD | 56.00 |

**TAX AND REGISTRATION NUMBER**

**HEADER TEXTS**
ExxonMobil's economic interest in your payment may have been sold to another affiliate, but seller retains title to your payment and collection rights.

We hereby certify that these goods were produced in compliance with the Fair Labor Standards Act of 1938 as amended.

This invoice is not subject to a further credit note.

**ITEM TEXT CODE EXPLANATION**
0114 - 15 ppm sulfur (maximum) Dyed Ultra-Low Sulfur Diesel Fuel.  For use in all nonroad diesel engines. Not for use in highway vehicles or engines except for tax-exempt use in accordance with section 4082 of the Internal revenue Code. Dyed diesel fuel. Nontaxable use only. Penalty for taxable use. This fuel meets the standards for Sulfur and Cetane Index or Aromatics content of 40 CFR 80.29 and is only for tax-exempt use in diesel motor vehicles as defined under section 4082 of the Internal Revenue Code.

| Payment terms | Due date | Amount due |
|---|---|---|
| 30 days end of month (invoice) | 03 Sep 2019 | 117,997.60 |

| | | | |
|---|---|---|---|
| Total | Net | 117,941.60 | USD |
| Total | Taxes | 56.00 | USD |
| Total | Amount | 117,997.60 | USD |

---

**ExxonMobil Oil Corporation  22777 Springwoods Village Parkway , Spring , TX 77389**



*0US000010143737576201 0001*

Bill to
Master and Owners of JANE A BOUCHARD
C/O BOUCHARD TRANSPORTATION COMPANY
58 SOUTH SERVICE ROAD, SUITE 150
MELVILLE NY  11747
USA

Remit to:
EXXONMOBIL OIL CORPORATION
P.O. BOX 8500 K-120
PHILADELPHIA, PA   19178-0120
Customer #: 101437
Invoice #: 37576201
Date: 22 Jul 2019

# CN Code

| | |
|---|---|
| Blank | The selling party is not aware of any rebate relating to this invoice, which would be given under a seperate credit note. |
| 1 | This invoice is not subject to a further credit note. |
| 2 | This invoice may be subject to a rebate which, if applicable, will be given under a separate credit note. |
| 3 | This invoice is subject to a rebate which will be/was given under a separate credit note. |
| 4 | This invoice was or will be subject to a rebate to be given under further credit notes. |
| 5 | Prices are preliminary base unit prices according to the terms and conditions of the contract. |

**ExxonMobil**

**marine delivery receipt**

FCO 469A (1-87)

| DEL'D FROM | InT T | DATE 7-14-19 | CUST. NO. | 118899 |
| VESSEL | JANE A. BOUCHARD | | SHIP TO | No. **758161** |
| INVOICE TO | Bouchard Transport Co. | | DEL'D TO | |
| | | | | (AND OR OWNERS) |

OWNER'S NAME AND ADDRESS

DELIVER PORT: Bayonne NJ 07002    DATE DEL'D TO VESSEL: 7.14.19

| CUST. ORDER NO. | M.O.D. | NEXT PORT OF CALL | ULTIMATE DESTINATION |

| NO. | PACKAGES SIZE | PRODUCTS | OFFICE CODES PRODUCT | TAX | PKG. CODE | QUANTITY | |
|---|---|---|---|---|---|---|---|
| 1 | BULK | MDO | | | | 56,000 | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

NUMBER OF EMPTY DRUMS RETURNED:

56000
900

STATE SALES AND USE TAX EXEMPTION CERTIFICATE

# All information must be provided—To exempt sales tax

STATE _NJ_

Name of Vessel _JANE H. BOUCHARD_

Home Port _NY/NY_

The undersigned certifies that the products identified on the above delivery receipt are exempt from the State Sales/and Use Tax for the following reasons: (Check appropriate box)

☒ Exemption is claimed because such products are for use as fuel or supplies for a vessel:
☒ Engaged in Foreign or Interstate Commerce
☐ Engaged in Commercial Fishing Business
☐ Other _____

Registration/License Number _____

The vendee agrees that if the material purchased tax free under this exemption certificate is used or disposed of otherwise than as herein specified, the vendee shall pay the tax, including interest and penalties on such material to the taxing authority or will reimburse the vendor for any tax, including interest and penalties assessed by the taxing authority. The above goods received in good order and bought and sold on credit of the vessel for continuation of the voyage.

_7-14-19_    X _David W. _____    X _Engineer_
DATE    SIGNATURE OF OFFICER OR AUTHORIZED REPRESENTATIVE    TITLE

ORIGINAL BILLING LOCATION

**ExxonMobil** ORIGINAL

FCO-135 D (8-84)
**truck meter invoice**

| DATE 7-19-19 | TERMS | | MOD. |
| DEL'D FROM IMTT | DRIVER | | TRUCK NO. |

DEL'D AT

CUSTOMER ORDER NO.

CUST. NO. 118899

SOLD TO JANE A. BOUCHARD
BOUCHARD TRANSPORT CO.
MSC

CASH DISCOUNT

INVOICE NO. **122117**

| MOBIL PRODUCTS | OFFICE CODES | | | QUANTITY | PRICE | AMOUNT |
| | PRODUCT | TAX | PKG | | | |
| PREMIUM | 01001-7 | | 1 | | | |
| SUPER UNLEADED | 01502-4 | | 1 | | | |
| REGULAR | 02001-6 | | 1 | | | |
| UNLEADED | 03501-4 | | 1 | | | |
| DIESEL FUEL | 16001-0 | | 1 | | | |
| HEATING OIL #2 | 18001-8 | | 1 | | | |

| CASH | | | SUB TOTAL | |
| CREDIT CARD SALES | | ITEM | CODE | RATE |
| CHECKS | | COLLECTION | 980029 | |
| | | SALES TAX | 99 | % |
| TOTAL | | | INVOICE TOTAL | |

STATE MOTOR FUEL TAX WHERE REQUIRED    GALS.

(For State of Missouri)
The undersigned certifies that the purchaser expressly declared his intention to file a claim for refund of the motor fuel tax included herein.

The seller of motor fuel certifies that the motor fuel tax will be paid as required by law.

The products covered on this invoice meet the ASTM standards set forth in Arkansas Statutes 53-601 as amended.

If taxes not shown separately, unit price shown above includes any applicable accrued federal and/or excise taxes unless otherwise indicated on this notice.

Signed _____ (Agent for Seller)

AA 4 1 4     7 6 1 1 0 1 1
AA 4 1 3     7 5 5 5 0 1 1

GALS. DEL'D. 56,000

RECEIVED PAYMENT FOR MOBIL OIL CORPORATION

RECEIVED ABOVE PRODUCTS AND QUANTITIES

---

SEC Level I

Oil Dock Operator to fill out a DoS (Declaration of Security) for each
maintain security of the pier. It is the responsibility of the Bulk Oil
for his respective department. A copy of the DoS will be forwarded to

DoS's. This fax is sent to Traffic and given to the Bulk Oil and
current MARSEC Level and any other information or instructions
" drawer where Traffic personnel are to file a copy of the Flash Fax.

ival of a vessel. All crewmen or visitors who come into the terminal
names must appear on the gate list, not just a company name, before
ey will be cleared or rejected by Traffic. Traffic will call the Security
for Visitors & Crew form must be attached to every copy and every
be placed in the Facility Security Manager's mailbox.

ibility of the Bulk Oil Dock Operator to check their photo ID's.
eir photo ID's.

or III, Traffic personnel are to **immediately notify the Facility**

SEC Level II

Supervisor to fill out all a DoS for all marine vessels. The Chemical
il Dock Operator will still handle the DoI's for barges and tugs. The
ps for their respective departments.
e **MARSEC Level I apply here.**

SEC Level III

Facility Security Manager or his designee. Bulk Oil Dock Operator
lk Oil and Chemical Supervisors for ships in their respective

e **MARSEC Level I apply here.**
e personnel must fill out a new DoS for each vessel.

DIRECTIONS

urrent MARSEC level.
.e. arrival and departure time).
el is docked. (such as loading, unloading, personnel arriving or

ed, initialed and checked off by the Dock Operator, Bulk Oil or
we are in) and ships master.

ore in the event of a security breach.

d shore and notification to government agencies if required.
ent to be issued to each vessel. This document will be issued with

2) The type of identification and screening checks that will be required while the vessel is at the dock.

3) Whether or not stores or supplies will be allowed and what vehicles, if any, will be allowed in the facility.

4) Inform the vessel that the booming crew has/will conduct searches of the berth and pier prior to and after arrival and departure.

5) Inform the vessel of their responsibility to check the waterside of the vessel while docked.

6) In the event that the MARSEC Level changes while the vessel is docked the vessel will be informed and a new DoS will be signed by appropriate Bulk Oil, Chemical or Security personnel and the vessel master. Any additional security measures will be discussed at that time.

The lower section of the form indicates areas for dates and necessary signatures.